In the Matter of the Estate of MORRIS SCHINASI, Deceased.*

Surrogate's Court, New York County, June 26, 1936.

*Wright, Gordon, Zachry & Parlin,* for the trustee.

*Szold & Brandwen,* for the objectors.

*John Godfrey Saxe,* special guardian for infants.

DELEHANTY, S. On this accounting the sole question presented by the objections is the propriety of a payment of $5,000 made by the accounting trustee for a survey of the possibilities of rehabilitation, reconstruction or modernization of hotel premises held in the capital of the trust. The premises in question occupy the northwest corner of Broadway and Seventy-second street, Manhattan, New York city. In August, 1934, when the criticized disbursement was first under consideration by the trustee, the ground floor of the premises was largely occupied by stores leased to separate tenants, while the remainder of the building was operated as a hotel under a lease

* See, also, 161 Misc. 636.

which produced a rental of $25,000 annually. At that time the hotel operations apparently were insufficient to cover the entire rent due from the hotel tenant, and there was repeated request by it for a reduction in rent. The real estate department of the trustee had under advisement generally the problems relating to the property and apparently regarded the building as one of its major problems. Eventually the matter was taken up with one of the vice-presidents of the trustee, who determined to obtain advice outside the regular employees of the institution.

The proof shows that this vice-president sent for the person whose employment followed and said to him that he wanted generally to know what to do about this hotel premises. The testimony is that the expert so hired was told in substance to report to the vice-president and to consider himself engaged at the rate of $1,000 a month without anything being said respecting the length of his employment. There is no question of the qualifications of the expert so hired. He is a man of wide experience in building construction and in the handling of problems affecting large units of real estate. At the time of his employment he had retired from an executive position of considerable importance and was doing consulting work of the sort for which he was employed. There is no doubt that, while active in his own business, he was compensated at rates very much in excess of the amount fixed as his monthly compensation. There is no doubt that he considered various plans for the demolition, the rehabilitation and the reconstruction of the property, and that he reported on these plans.

While the hiring, as testified to, was at the rate of $1,000 a month, and while the expert so employed continued his service from August, 1934, to March or April, 1935, he was paid, not on a monthly basis, but irregularly, and received a total of $5,000. The question here presented is whether any part and, if so, how much of such payment may be credited to the trustee in its accounts. It has charged the entire amount to the capital of the trust, asserting that it was a necessary and special expenditure required to be made in the effort to preserve the principal of the trust estate. The trustee asserts that the studies made, while not acted on, had been a guide and will continue to be a guide to the trustee in connection with its management and handling of the property. For these reasons, it asserts that the expenditure was and will be of value to the trust estate. It asserts that the property was of so large value and the risk of loss so substantial and the problems presented by the prospective failure of the hotel tenant so out of the ordinary routine of building management that it was justified in obtaining outside expert advice and in paying for it.

In behalf of objectants (both life tenant and remainderman) it is denied that the work was necessary or that the expenditure was justified. It is asserted that the work was wholly useless to the trust because the changing conditions in real estate and the income therefrom would make any set of plans subject to variation by reason of such change in conditions and hence that the expenditure has been a total loss which should be borne by the trustee. Objectants assert that the problems were not unique, that the questions presented were entirely within the competency of persons in the staff of the trustee, that the trustee was chargeable with the duty of making the inquiries and collating the facts which the expert obtained, and then of determining its course of conduct without the expenditure of any money. Objectants assert that the management compensation of five per cent on gross rents covered the services of the sort involved in determining the future of the building. They assert that, in any event, no expenditure of the sort here made should have been authorized by the trustee until an application for instructions had first been made and the parties interested in the estate given an opportunity to be heard. Finally, they say that the amount of time devoted was wholly unnecessary and that the expenditure was wasteful in the extreme and that the same data could and should have been collected at a small fraction of the cost paid by the trustee. The income beneficiary affirms upon this hearing a consent given by her attorney to the expenditure of $500. The remaindermen deny any liability whatever.

Actually the occupancies in the building were continued just as before the studies were made, and no physical change in the building resulted from these studies. The proof shows that after the various ideas presented by the report of the expert had come to the attention of the real estate committee of the board of directors, some one of its members procured the opinion, apparently without charge, of a wholly different person and, on the basis of his report and the general data in the trustee's possession, the whole matter of projected change in the building was dropped.

The real estate committee of the board of directors had in its personnel two men of very wide experience in real estate matters. One of these was especially versed in hotel management problems. The members of this committee (other than the vice-president referred to) apparently were not consulted about the employment of the expert. Neither were they asked to express an opinion about the data which had been collected by the ordinary employees of the trustee. The proof fails to show that there was any emergency confronting the trustee which was beyond the competence of its available facilities. The real estate department had sufficiently formulated the various aspects of the problem which

would confront the trustee if the hotel tenant became bankrupt or ceased to operate. There was, in fact, no immediate emergency except the one very common in that period when tenants were feeling the pinch of the depression and were seeking relief by means of rent reductions. The situation in the building had not reached an acute crisis and, as the evidence proves, there was no insuperable difficulty in continuing the operation of the hotel premises as before. It is, of course, not fair to a fiduciary to ignore the conditions as they are presented or to judge a fiduciary by results which could not have been foreseen. The fiduciary, however, was obliged to use reasonably the facilities at its command. In the case of a corporate fiduciary, it represents that it has facilities not available to the individual who is inexperienced in business. A corporate fiduciary is presumably equipped to handle even serious problems in the administration of real estate and to do it without burdening the property in its charge beyond the standard of compensation fixed by law. This fiduciary was shown to have had personnel adequately equipped to handle this problem.

Here the burden was on the fiduciary to show the need for this expenditure and for this substantial tax upon the capital of the estate. It is the view of the court that that need has not been shown, and hence that the expenditure has not been justified. To the extent of $500 the expense is allowed as a charge against income, but this allowance is made solely because of the express consent to the allowance placed upon the record in behalf of the income beneficiary. The balance is wholly disallowed.

Submit, on notice, decree settling the account accordingly.