In the Matter of the Judicial Settlement of the Intermediate Account of Proceedings of CHEMICAL BANK & TRUST COMPANY, as Trustee of the Residuary Estate under Article Tenth of the Last Will and Testament of MORRIS SCHINASI, Deceased, for the Benefit of LAURETTE SCHINASI, VICTORIA S. PINI, ALTINA S. SANDERS, JULIETTE S. DONNET and Others, Covering the Period from March 1, 1929, to July 31, 1935.

CHEMICAL BANK & TRUST COMPANY, as Trustee, etc., Appellant; LAURETTE SCHINASI, JULIETTE S. DONNET and ALTINA S. SANDERS, Objectors, Respondents.

First Department, July 1, 1937.

*Charles C. Parlin* of counsel [*Paul H. Fox* with him on the brief; *Wright, Gordon, Zachry & Parlin,* attorneys], for the appellant.

*Maxwell Brandwen* of counsel [*Szold & Brandwen,* attorneys], for the respondents.

*Thomas B. Fenlon* of counsel [*Emmet, Marvin & Martin,* attorneys], for the Bank of New York and Trust Company, as *amicus curiæ.*

COHN, J. Morris Schinasi died September 10, 1928, and his will was admitted to probate on October 2, 1928. Under the provisions of the will the entire residuary estate was given to Chemical Bank & Trust Company, as sole trustee, in trust, the income to be paid to the widow and daughters of the deceased for life, with remainders over.

The properties received by the trustee consisted of personalty valued at $3,136,625.59 and real estate worth $3,333,021.23. The realty consisted of three parcels: (1) A residential property in Larchmont, N. Y.; (2) a warehouse at Cavalla, Greece; (3) property known as Hotel St. Andrew with stores, located on the northwest corner of Broadway and Seventy-second street, New York city. In the hotel property the basement is leased as a cafeteria; the ground floor is laid out for occupancy by eight retail stores which are leased to various retail merchants; the remaining portion of the property is laid out as a hotel unit and is leased to the Fairfax Hotel Company.

In its accounting the trustee claimed ordinary income commissions under section 285 of the Surrogate's Court Act on the basis of the gross rentals which it collected from these properties. The surrogate, however, allowed commissions only upon the net rentals, *i. e.,* the income from the real property after all expenses had first been deducted.

The trustee also sought approval in its accounting of $9,251.25, representing payments of $4,751.25 made to brokers for the negotiation of new leases, and of $4,500 to one Walter T. Smith for professional services as a building expert rendered in connection with problems concerning the proposed remodeling or disposition of the hotel property.

The surrogate decided that normal or regular commissions (Surr. Ct. Act, § 285, subds. 1, 2, 3, 4) are to be computed on the basis of the net rents. Such net, the court held, is the amount distributable beneficially to the persons interested in the estate; it is the balance left after payment of housekeeping charges, mortgage interest, taxes, water rents, brokerage, management expenses and

every other operating charge, plus the five per cent charge on gross allowable under subdivision 9 of section 285 of the Surrogate's Court Act.

We think that the basis used by the surrogate in computing these commissions is correct. (*Beard* v. *Beard,* 140 N. Y. 260; *Matter of Hayden,* 54 Hun, 197; affd., 125 N. Y. 776; *Matter of Sidenberg,* 204 App. Div. 255.)

In *Matter of Hayden* (*supra*), where the testator authorized his executors to continue the business of manufacturing and selling furniture in which the deceased was engaged at the time of his death, it was held that the executors were entitled to commissions only on the profit from the business. A similar question was again passed upon by the Court of Appeals in the case of *Beard* v. *Beard* (*supra*). There the trustees, pursuant to authorization of the testator, continued the operation of a piece of real property on which were located wharfs and storehouses. The fiduciaries sought to take commissions on the gross receipts from the patrons utilizing these wharfage and storage facilities. Our highest court ruled that they were entitled to retain commissions not on the gross receipts but only on the net income. This court, in *Matter of Sidenberg* (*supra*), upon the authority of the *Beard* case, determined that commissions were to be computed on the net income only resulting from the financial operations of a hotel.

It is contended by appellant that these decisions merely exclude commissions upon investments and reinvestments and moneys disbursed and received in the conduct of a business carried on to produce net income. They do not apply, it is claimed, to a case where rentals from real estate are collected by a trustee and disbursements affecting that very property are made by him.

The Court of Appeals, in the case of *Beard* v. *Beard* (*supra*), stated the rule for allowance of statutory commissions to trustees as follows (p. 265): " We think the true rule for allowance of statutory commissions is this: Trustees are entitled to commissions for receiving all moneys which constitute the *corpus* of the estate, and any additions thereto from increase of any kind, and thus the moneys upon which commissions are to be computed can never exceed the gross amount of the estate and its net income; and the moneys paid out upon which commissions may be computed are the moneys paid out of the estate for debts, expenses of administration and to legatees or other beneficiaries, moneys which operate to diminish the estate as it exists in the hands of the trustees and pass out of and away from the estate. This rule excludes commissions upon investments and re-investments and moneys disbursed and received in the conduct of a business carried on to

produce net income. In the case of such business, the commissions are to be computed on the net income only which came to the *corpus* of the estate as an increase thereof."

While the management of, and the collection of rents from, a parcel of real property is not the particular type of business operation involved in the *Beard* case, no good reason has been suggested why the business of managing real estate should be an exception to the rule there enunciated. The business of owning and managing real estate is no different than that of storage or wharfage or that of managing and selling furniture in the sense that each is pursued to secure profits.

In following the law declared in the *Beard* case, that is by computing the commissions " on the net income only which came to the *corpus* of the estate as an increase thereof," we are of the view that the surrogate here adopted the correct rule.

With respect to the payment of $5,000 made by the trustee to one Walter T. Smith, it is claimed by the trustee that the disallowance by the surrogate of the item to the extent of $4,500 was erroneous. The court properly found that the trustee had failed to sustain the burden of proving the necessity for this expenditure. It was scarcely reasonable for the trustee to incur an obligation of $5,000 for the aid of an outside expert when it had available a competent staff of realty experts who might have rendered the services performed by Smith without additional expense to the estate. We think the surrogate correctly disallowed this item to the extent of $4,500 thereof. Because of the express consent of the income beneficiary the surrogate permitted a payment of $500 to this expert for his services.

This leaves for consideration the matter of the court's disapproval of the items totalling $4,751.25 in the account which the trustee paid for brokerage commissions for the leasing of stores in the hotel property at Seventy-second street and Broadway, New York city, and the residential property at Larchmont, N. Y. The refusal to allow these expenditures was based on the premise that the sums so paid to brokers as commissions for negotiating leases of portions of the trust property must be borne by the trustee and paid out of the five per cent additional compensation on gross rents allowed by section 285, subdivision 9, of the Surrogate's Court Act.

There can be little doubt that in enacting subdivision 9 of section 285 of the Surrogate's Court Act the Legislature intended that fiduciaries perform substantial services. Nevertheless, the Legislature did not have in mind that the five per cent additional commission was to be all inclusive. It was designed to cover the ordinary and usual expenses incident to rent collection and the

supervision of real estate. The trustee is entitled to be credited with all sums necessarily expended in the performance of his duties. (*Corn Exchange Bank Trust Co.* v. *Bankers Trust Co.*, 268 N. Y. 224.) We are of the opinion that commissions paid to real estate brokers for obtaining tenants and negotiating leases for the stores of the hotel property and the country house are unusual and extraordinary expenses which in the circumstances of this case are properly chargeable against the estate and should not be deducted from the five per cent additional compensation on gross rents allowed to the trustee for collecting rents and managing the real property.

The decree, therefore, should be modified to the extent of allowing the expenditure of $4,751.25 made by the trustee for brokerage commissions as a charge against the estate, and in all other respects affirmed.

MARTIN, P. J., UNTERMYER and CALLAHAN, JJ., concur; DORE, J., dissents in part.

DORE, J. (dissenting). For the reasons stated in the opinion of Surrogate FOLEY in *Matter of Swartz* (162 Misc. 46) I dissent from so much of the majority opinion as holds that the trustee's ordinary income commissions under section 285 of the Surrogate's Court Act are to be computed on the net income from the real estate. Under section 285, the trustee is entitled to compensation, so far as normal commissions are concerned, at the percentage rate specified upon the gross rents received and upon the amounts disbursed and paid over.

In the absence of any claim or proof of fraud or bad faith on the part of the trustee and in view of the circumstances disclosed with regard to the property in question, I consider also that the trustee was justified in the employment of the building expert, Mr. Walter T. Smith, and entitled to pay him the fair and reasonable compensation for his services as an estate disbursement. He was retained as an expert to make a survey for the trustee of the possibilities of rehabilitation, reconstruction or modernization of the hotel premises that represented, on the basis of the executors' appraisal, a capital asset of about $3,000,000 out of an estate of $5,894,000. Concededly the services were rendered and the survey used as a basis of information for final decision in the matter. Indeed, it would not have been prudent to attempt to reach a conclusion without producing data such as was concededly provided in the extensive survey made.

On the facts disclosed it would be an error to lay down, even by inference, a rule that a trustee, including a corporate trustee, could

not in the exercise of good faith, reasonable care and prudence, and for the protection and preservation of so large an estate asset, procure the services of an expert builder and authority on hotel and apartment building construction before it finally determined what to do so as to render the asset most valuable to the estate. The trustee's action is to be tested in the light of the conditions that presented themselves when the question was faced, not in the light of results that could not reasonably have been foreseen. The problems as they then presented themselves were so far out of the usual routine of ordinary real estate management as to justify obtaining the advice of an expert builder and paying for it out of estate moneys as part of the trustee's reasonable and necessary expenses provided for under section 285 of the Surrogate's Court Act. The trustee, in my opinion, amply sustained the burden of showing the need of such expert advice.

I consider, however, that the arrangement made to compensate the expert at the rate of $1,000 a month without any proviso respecting the length of his employment was not a prudent one, and that the trustee may not be credited with the bill as paid but only with fair and reasonable compensation for such services as were reasonably necessary.

Accordingly, I recommend that this aspect of the case be remitted to the surrogate to fix such fair and reasonable compensation on the record as made and on additional testimony if necessary.

Except as herein stated, I otherwise concur with the majority opinion.

Decree modified to the extent of allowing the expenditure of $4,751.25 made by the trustee for brokerage commissions as a charge against the estate, and in all other respects affirmed. Settle order on notice.