238 So.2d 336

William Q. DUNBAR, Margaret H. Mc-
Tigue, Marie S. Dunbar, and
Deborah D. McPoland

v.

BIRMINGHAM TRUST NATIONAL BANK,
a Corp., and Homer C. Starks, Sallie
C. Starks, and Gay H. Harris.

BIRMINGHAM TRUST NATIONAL BANK,
a Corp.

v.

William Q. DUNBAR, Margaret H. Mc-
Tigue, Marie S. Dunbar, and Deborah D.
McPoland, Homer C. Starks, Sallie C.
Starks, and Gay H. Harris.

6 Div. 753, 756.

Supreme Court of Alabama.

July 30, 1970.

William M. Acker, Jr., and Shuford B. Smyer, Birmingham, for appellee and cross-appellant, Birmingham Trust Nat. Bank.

Beddow, Embry & Beddow, Birmingham, for appellants.

Fred S. Ball, Montgomery, for appellees, Sallie C. Starks, deceased, and Homer C. Starks.

HARWOOD, Justice.

Moses H. Crittenden died in 1929, and his last will and testament was admitted to probate in Jefferson County, Alabama, in 1930.

This will set up a trust, the Birmingham Trust & Savings Company of Birmingham (now Birmingham Trust National Bank), being named as trustee. In May of 1932 the bank began its duties as trustee, having made final settlement as executor of Crittenden's will.

The provision in his will that has provoked this litigation is Item 7, which is as follows:

"It is my will, *and I direct my trustee to look after and manage all of the trust*

*property,* paying all taxes and betterment charges against the same, and to keep the improvements on the property insured, the cost of which is to be paid from the income; with power in the trustee to rent or lease the property from time to time and to collect the rents and incomes therefrom.

"I further direct that my said trustee shall have fair and reasonable compensation for its services, *not to exceed five Per Cent (5%) per annum on the gross income from the trust property,* and I direct that my trustee shall not be required to give bond as such trustee." (Emphasis ours.)

At the time of his death he had three daughters, Erline, Sallie and Lula. After making provision for his wife, now deceased, whose interest is not germane to this opinion, he provided that after his real estate had been improved the net income therefrom should be divided, share and share alike, between his three daughters or the survivor of them, the child or children, or descendants of any deceased daughter, to take the share the parent would have taken if living up to the time set for division and distribution by the terms of the will. This event has not yet occurred and the trust is still active.

At the time of the filing of the original bill of complaint, Erline, now Erline Smith, still lived. She had a daughter, Marie Dunbar and two grandchildren, William Dunbar and Deborah McPoland. All four were named as parties complainant. His daughter, Sallie, now Sallie C. Starks, was also living. She had one child, Homer Starks. They were named parties respondent. Lula, later Lula Hamilton, was deceased. She had one son, Foster, who was also deceased. He was survived by two children, Gay Harris and Margaret McTigue. Margaret McTigue was named as party complainant. Gay H. Harris, her brother, was named as party respondent.

The objective of the bill of complaint was to remove the Birmingham Trust National Bank as Trustee for failure to partly perform its duties and to recover from the bank, as Trustee, the sum of over $100,000, representing commissions paid by the bank to a real estate agent in Birmingham which had negotiated and serviced the lease with the Burger-Phillips Company on a store constituting a part of the corpus of the trust. The Trustee had charged these commissions as an item of expense. It is the contention of the complainants that under the terms of the trust the 5% which the bank had charged the trust on the gross sums received by it obligated them, either to handle the rental themselves, or if they secured the services of others to do so, to pay any fees or commissions under their 5%. In short, the complainants claimed that the beneficiaries of the trust were being charged 10% on that part of the gross income received from the Burger-Phillips lease rather than the 5% provided for in the will.

The bank defended on two grounds. The first was that no question could now be raised as to the propriety of the bank's action because of the laches of the beneficiaries in questioning the payment of commissions to the real estate agency for the period in question which was in excess of thirty years. The second was that under the existing facts the bank was fully justified in securing the services of the agent in question and paying for services out of trust funds as an additional charge against the estate. Collateral to this litigation were petitions by attorneys for the complainant and attorneys for the bank that they be paid for their services in this litigation from the assets of the trust estate.

Following the conclusion of the testimony which, in addition to the oral testimony of a number of witnesses, consisting of a deposition and numerous exhibits, the Circuit Court of Jefferson County rendered the following decree:

"THIS CAUSE having come on to be heard upon the pleadings and proof as

noted, the Court from evidence material and relevant to the issues presented makes the following findings of fact:

*"Findings of Fact*

"1. Item 7 of the Will of M. H. Crittenden, deceased, is broad enough to contain the implied right (and under the circumstances reflected by the testimony, the duty) to employ a real estate agent for the purpose of procuring a tenant and for obtaining extensions and renewals of the lease on the downtown real property occupied by Burger-Phillips Company. There was an obvious need for the services of Houseal-Simmons Agency, or some similar real estate agent with the expertise which Houseal-Simmons Agency demonstrated in negotiating a highly advantageous lease in the heart of the mercantile area of downtown Birmingham, Alabama. This fact, when considered together with the absence of any express prohibition in the Will against the employment of a real estate agent, leads to an interpretation of Item 7 which permits the employment of a real estate agent at the customary five (5%) per cent commission on the gross rents, same being a proper charge against the trust administration without any reduction in the commission provided to the trustee for its services.

"2. Even if the testator M. H. Crittenden, deceased, had not intended for Item 7 to have the meaning which the Court has here found it to have, the income beneficiaries have treated it as having the said meaning over a period in excess of thirty (30) years, and the Court therefore finds that complainants are also barred by laches, there having been no evidence whatsoever to explain or to excuse the long delay in filing suit.

"3. Although the services of the solicitors for the respondent Birmingham Trust National Bank, as Trustee under the Will of M. H. Crittenden, deceased, were substantial and the Court has no quarrel with the value placed upon them by the various witnesses, the Court concludes that the said services inured primarily to the benefit of the Birmingham Trust National Bank itself rather than to the trust and should therefore be borne by the Bank and not by the cestuis que trust.

"Order

"Based on the foregoing findings of fact, it is ORDERED, ADJUDGED AND DECREED by the Court that the complainants' prayer for relief be and the same is hereby denied in all respects; and the prayer of respondent and cross-complainant, Birmingham Trust National Bank is also hereby denied in all respects. The Court costs are hereby taxed against complainants, for which execution shall issue if not paid within thirty (30) days.

"DONE AND ORDERED this 25th day of March, 1969.

"Wm. C. Barber
Circuit Judge Sitting
in Equity."

From this decree the complainants appealed and the respondent bank cross-appealed challenging disallowance to them of attorneys' fees.

In order that the position of all parties should be understood, it can be stated here that respondent Gay H. Harris, against whom no relief was sought, suffered a decree pro confesso to be taken against him and respondents Sallie C. Starks and Homer Starks, who had demurred to the bill on the ground that they were unnecessary respondents against whom no relief was sought, nevertheless joined in the appeal to oppose the allowance of solicitors' fees to anyone unless such fees were so granted as not to reflect a charge on their share of the trust estate. They were otherwise neutrals in the court battle.

We have found no Alabama case on the exact issue presented by the facts of this case, that is, the right of trustee to employ

specialized help in carrying out his duties in the management of the trust estate, and charge the expense thereof against the trust, when such employment is to the best interests of the trust. The leading authorities in the field of trusts, as well as the decisions of our sister states, appear to be in accord that such procedure is proper.

The decisions are cited in that part of the text material hereinafter set forth and we will omit them in this opinion.

Under some circumstances the expense is not properly chargeable. Trustees must earn their keep and as to routine services, ordinary overhead must be absorbed by the trustees. They cannot simply farm out their duties and expect the beneficiaries to bear the cost nor can they, at the expense of the trust estate, employ others to do that which they themselves are duty bound to perform.

Scott on Trusts, Vol. II, Sec. 188.3, which section is entitled "Employment of Agents," sets out the rule as follows:

"A trustee can properly incur expenses in employing attorneys or brokers or other agents or servants so far as such employment is reasonably necessary in the administration of the trust. He cannot, however, properly incur expenses in employing agents to do acts which he ought personally to perform."

Mr. Bogert, in his work Trusts and Trustees, Second Ed., Sec. 972, states the principle to be:

"The trustee is entitled to be credited on the accounting with all sums paid or property transferred by him from trust funds, and with sums advanced by him from his own funds, when such payments or transfers were in the exercise of powers expressly or impliedly granted to him by the trust instrument, or powers given him by statute or court order, or reasonably incidental to the exercise of such powers."

No express declaration in the trust is necessary to create the right of a trustee to incur, and be reimbursed for, expenses properly incurred in the execution of the trust. Hill on Trusts and Trustees, 7th Ed., Vol. II, Sec. 570.

In brief counsel lays much stress upon the holding in In re Schinasi's Estate, 162 Misc. 632, 294 N.Y.S. 400. This was an opinion by the Surrogate's Court of New York County. In the course of its opinion, the Surrogate's Court disallowed as an expense against a trust estate an expense item of $5,000 incurred by the trustee for a survey of a hotel building owned by the trust estate. This survey proved useless to the trust estate, and might well have been made by the staff of the trust department of the trustee, the Chemical National Bank of New York. While in passing, the Surrogate also disallowed as a charge against the trust payments made to a real estate agent for negotiating and handling a lease on the property, the entire opinion of the Surrogate is directed toward the expense incurred in having the survey made. In considering this expense the Surrogate wrote:

"A corporate fiduciary is presumably equipped to handle even serious problems in the administration of real estate and to do it without burdening the property in its charge beyond the standard of compensation fixed by law. The fiduciary was shown to have had the personnel adequately equipped to handle this problem." (The survey.)

On appeal the Supreme Court, Appellate Division, First Department, modified the Surrogate's opinion in reference to disallowing the commissions paid the real estate agent for obtaining tenants and negotiating leases on the property, and ordered that such commissions be charged against the trust estate. In re Schinasi's Will, 277 N.Y. 252, 14 N.E.2d 58.

On further appeal to the Court of Appeals, In re Schinasi's Will, In re Chemical Bank and Trust Co., 252 App.Div. 82, 297

N.Y.S. 243, that court affirmed the conclusion of the Supreme Court, Appellate Division, supra, in reference to placing the real estate agent's fees for handling the lease of the property as a charge against the trust estate, the court writing:

"A trustee is ordinarily not qualified to act as broker in obtaining tenants for real property. Like other persons who manage real property, he may at times obtain a tenant without the intervention of a broker. Indeed, a trustee might be charged with failure to use proper care if he failed to do so."

The appellant can find no comfort in the Schinasi case in its final adjudication.

More can be expected of corporate trustees who hold themselves out as expert handlers of estates than can be expected of one unskilled who by reason of friendship or family relationship finds himself in the role of a testamentary trustee. Situations arise when trustees, whether corporate or personal, find themselves beyond their depth or beyond capabilities which can reasonably be expected of them.

■ When this occurs they not only have a right but have a duty to protect the trust estate by seeking assistance from others and when such assistance is so sought, the cost is a proper charge against the trust estate.

■ With these considerations in mind we come now to consider whether there was evidence to support the finding of the trial court in this case that there was need for the employment of an agent with specialized competence to handle the rental of the Burger-Phillips property. A reading of the testimony reveals the need and value of a specialized expert in the handling of large commercial properties in downtown areas. None of the beneficiaries has voiced any complaint as to the results accomplished. Over two million dollars in rentals have been realized from the Burger-Phillips leases which have still many years to run

with substantial guaranteed minimum rent. It is common knowledge that downtown rental properties in large metropolitan areas have suffered during the past years. The growth of suburban shopping centers has diminished the heretofore monopolistic position of downtown business property.

But such has not been the history of the Burger-Phillips property. That the services of the agent chosen by the bank as trustee have been invaluable to the beneficiaries, cannot be doubted. Had the bank as trustee chosen to go it alone, an entirely different situation might be the plight of the beneficiaries today.

■ The results accomplished bespeak the good judgment of the trustee in the handling of the real estate in the manner now complained of. The testimony and exhibits show that the trustee and the agent both kept in close touch with the rental situation in Birmingham and stayed ahead of developments, all to the advantage and profit of the trust. The record amply supports the finding of the trial court and his application of the law to the facts also meets with our approval.

■ We do not say that in every instance a trustee charged with the management of real estate or its sale can employ agents with commissions to be charged to the trust. This may not always be justified. We do say that under the factual background of the present case, the actions of the trustee were a proper exercise of its duties.

Counsel for appellant has made several assignments of error relating to the rulings of the court in overruling appellants' objections to questions propounded to various witnesses.

■ When an equity court overrules an objection to a question, it is to be assumed that such evidence was considered by the court, and if the ruling was erroneous, a reversal is warranted. Pfingstl v. Solomon, 240 Ala. 58, 197 So. 12.

However, if the remaining evidence is without conflict, and is sufficient to support the decree, a reversal because of the erroneous ruling on the evidence is not required. Bessemer Theatres v. City of Bessemer, 261 Ala. 632, 75 So.2d 651; Lightsey v. Stone, 255 Ala. 541, 52 So.2d 376.

 We also apply Sup.Ct. Rule 45 to equity cases and will not reverse a decree unless in the opinion of the court, after an examination of the entire record, it appears that the error complained of probably injured the appellant in a substantial right. Roubicek v. Roubicek, 246 Ala. 442, 21 So. 2d 244.

Here, the issue on the merits was whether the appellee bank as a trustee could employ a real estate agent to procure a tenant and negotiate a complex lease on property of the trust and pay from the trust assets the fees paid the real estate agent for such specialized services, or should the bank be required to pay these fees from the fees allowed it as trustee.

There is ample undisputed evidence showing the complexity of completing the lease here involved, and the benefit accruing to the trust therefrom, and of the propriety of the bank in procuring the services of the real estate agent under the circumstances shown.

Applying the governing legal principles to such undisputed facts, the decree of the lower court in reference to allowing the real estate fees as a charge against the trust, was the only correct conclusion to be reached. No necessity arises to consider those assignments relating to alleged erroneous evidential rulings.

We find no basis for disturbing the Chancellor's ruling in reference to the disallowance of fees to the attorneys for the bank in representing it in the proceedings below. The reasons for the Chancellor's conclusion in this regard appear sound. For this same reason, we are denying ap-

pellee counsel's request for a fee for representing the appellee on this appeal.

The decree is affirmed in all respects.

Affirmed.

LIVINGSTON, C. J., and LAWSON, MERRILL and MADDOX, JJ., concur.