75 So.2d 651

**BESSEMER THEATRES, Inc.**

v.

**CITY OF BESSEMER.**

**6 Div. 201.**

Supreme Court of Alabama.

Nov. 4, 1954.

Francis H. Hare, Birmingham, for appellant.

634

Ling & Bains, Bessemer, for appellee.

Smith, Hand, Arendall & Bedsole,
Robt. B. Wilkins, Mobile, amici curiae.

PER CURIAM.

This case has been previously before the Court on appeal from a decree overruling a demurrer interposed to the bill seeking a declaratory judgment. City of Bessemer v. Bessemer Theatres, 252 Ala. 117, 39 So. 2d 658.

On the former appeal the only question determined was that the bill filed by the Bessemer Theatres, seeking a declaratory judgment, was not subject to the demurrer interposed. It did not in any respect undertake to decide the controverted issue which the bill alleged then existed. It was sought to obtain a decision of the Court on the merits of the controversy by attaching as an exhibit to the bill the documentary evidence upon the basis of which the controversy hinged. But the Court declined to enter into the merits of that question and only determined that the bill made a sufficient allegation of the controversy to entitle the complainant to a declaratory judgment. Upon answer being filed in the trial court the cause came on for a final decree. Testimony was taken before the trial judge, which testimony consisted in the main of exhibits which had been attached to the original bill together with proof of formal facts which were not controverted, and the testimony of some witnesses to which we will refer more in detail.

The controversy was with reference to the validity of a city ordinance (No. 833) adopted by the City of Bessemer. Section 2 of the ordinance levied a license tax on all those who operated a motion picture theatre within the corporate limits of the city. The amount of the tax (the same as to all) was one cent on each charge for admission of more than ten cents and less than and including fifteen cents; and two cents on each charge for admission in excess of fifteen cents.

The contention made by the complainant is that the ordinance denies to complainant, which is an operator of two motion picture theatres in the City of Bessemer, the equal protection of the laws and the right to a uniform operation of the laws; that it grossly and unlawfully discriminates against the complainant, and that for several years there were other businesses conducted within the city as well as the picture show theatres which were taxed in various amounts under the general license ordinance of the city, and referred particularly to the Tennessee Coal, Iron and Railroad Company and Pullman Standard Car Manufacturing Company, and wholesale and retail businesses conducted in the city, as enjoying large annual receipts far in excess of those received by the complainant; but that complainant was taxed under said ordinance in an amount far in excess of the tax levied under the provisions of said ordinance on said other named enterprises.

It is not claimed by complainant that it is discriminated against within the classification made by the ordinance, but that the discrimination is against that class of enterprises and in favor of other businesses of a different sort in the city. It is alleged, and not denied, that the license tax is principally a revenue measure, and not merely an exercise of the police power by the city.

■ The fact that the nature of the business of the complainant is useful and legitimate is not material to the inquiry of whether the license charged for revenue purposes is excessive, provided it is not prohibitive nor oppressive. That would be material in respect to a license charge levied under the police power of the city. 33 Am.Jur. 367, section 44.

■ The contention of complainant is that the ordinance selects the motion picture business and burdens it with a different and greater amount of license tax than that imposed upon any other class of business, and so vastly greater that it makes it an arbitrary and capricious exercise of the power of the city to raise revenue by that means. Reliance is had upon the equal protection clause and the due process clause of the Fourteenth Amendment to the Constitution of the United States as well as pertinent provisions of the Alabama Constitution, there being in the latter no equal protection clause except as implied in other sections. McLendon v. State, 179 Ala. 54, 84, 60 So. 392.

On the trial the respondent introduced as a witness J. Terry Huffstutler, who qualified as a practicing lawyer specializing in taxation and as a tax consultant, and chairman of the tax section of the Alabama Bar Association. After showing his qualification as an expert in that line, the witness was asked certain questions by the respondent, to which objection was overruled, such as the following: "I will ask you if it is not a consistent and *good tax policy* to consider a number of several and different factors in formulating the taxing policy of local government?" Also, "I will ask you whether or not it is *common and proper,* and whether it has been common and proper, for legislative bodies of the various states and the various cities, to segregate certain types of businesses and classify them into certain classifications for excise tax purposes?" Also, whether it has been his (witness) observation "for the various city governments to make a distinction between a large industry such as the United States Steel Corporation and the Tennessee Coal, Iron and Railroad Company, for taxing purposes?" Also, "from your experience isn't [it] true that if you take a single tax, say a tax on gross receipts, and consider that tax by itself, apart from all other taxes paid by any one business, or any class of business, that you can usually show a gross disparity between the several classes of business affected by that tax?" Again, "I will ask you from your experience in your field as a tax consultant if it is not generally true that the federal luxury tax of twenty percent has not been generally accepted by the people?" Again, "I will ask if from your experience as a tax consultant and tax attorney if you have found that there has been a common development in the tax law to levy taxes on the net profits of businesses?" Upon objection being overruled the witness answered those questions in a manner favorable to the respondent. The ruling as to each is assigned as error by the appellant.

In passing upon those assignments of error, and as to whether the decree of the court should be reversed on account of the rulings, we must consider the rule which is now set up in section 372(1), Title 7, Code of 1940, with reference to objections made to testimony offered orally on the trial before a court of equity. The rule is in substance that it is not necessary to make objection to the testimony which is irrelevant, immaterial and incompetent, or have a ruling upon that question, and if no objection is made and no ruling is had it will be presumed that the trial court considered only such evidence as was relevant, material and competent, and on appeal this Court will so consider it. It is also provided that if specific objection is made and a ruling had thereon, that feature of the statute will not apply.

■ We think the evidence referred to above is clearly objectionable and subject to the objection which was interposed to it by counsel for the complainant. It is but the expression of an opinion by an attorney, who is competent as such, with respect to what the law is as pertinent to the issues here involved and with respect to what other cities and towns and other states have done and the view that they take of the question. We think it is clear that those are not matters of fact as to which an attorney may give evidence. Goodman v. Walker, 30 Ala. 482(8); Brandon v. Progress Distilling Co., 167 Ala. 365, 52 So. 640; State v. West Point Mfg. Co., 236 Ala. 467(6), 183 So. 449; Waters v. American Casualty Co., ante, p. 252, 73 So. 2d 524.

■■ It has been held in such a situation that when the court overrules an objection to illegal evidence it shows that it considered illegal evidence and, therefore, the presumption that he only considered legal evidence does not apply. Farish v. Hawk, 241 Ala. 352, 2 So.2d 407. When that status arises, it does not always follow that the decree of the court should be reversed because of the erroneous ruling. We have applied to it the theory which obtains in trials at law without the intervention of a jury, that the admission of illegal evidence over objection does not require a reversal when the remaining evidence is without conflict and is sufficient to support the judgment. Pfingstl v. Solomon, 240 Ala. 58, 197 So. 12; Roubicek v. Roubi-

cek, 246 Ala. 442(4), 21 So.2d 244; Lightsey v. Stone, 255 Ala. 541, 550, 52 So.2d 376; Low v. Low, 255 Ala. 536(9), 52 So. 2d 218.

We do not find any conflict of a material sort in the remaining evidence which was not subject to the objection made and acted on. The inquiry is therefore whether the decree of the court is supported by such uncontradicted evidence.

Complainant's evidence in the main consisted of an audit made by a certified public accountant for the years 1945 and 1946. The bill was filed December 13, 1947. The purpose was to show the cost of the license tax on the motion picture theatre business for those years as compared with the cost of the license tax on other businesses in the city.

The complainant owned and operated two motion picture theatres in Bessemer—the Grand Theatre and the State Theatre. With respect to the Grand Theatre for the year 1945, the report showed the total license charges collected under the ordinance, all of which was added to the cost of the entrance fee and collected from the patrons, aggregated $7,511.98. The total amount of collections for admissions was $96,931.42 and, therefore, the percentage was 7.75% which was added to the price of the charge. In addition the annual license tax of $1,119.82 was charged and collected. This consisted of $300 plus one-half of one percent on gross receipts in excess of $10,000. That added to the $7,511.98, above, made $8,631.80 total license tax for 1945. This was 8.9% of the total receipts. For 1946 the tax under the ordinance was $9,042.77, the receipts $128,384.22 or 7.04%: the other license was $1,439.65, which made a total license of $10,482.42, which is 8.16% of the receipts.

The status of the State Theatre in that respect is as follows: For 1945 the tax under the ordinance amounted to $2,810.91, which was passed on to the patrons. The total receipts were $30,392.88 or 9.24% thereof. The annual license charge was $453.43 added to the other made a total license charge of $3,264.34 or 10.77% of the intake. For 1946 the tax under the ordinance was $3,532.65, total receipts were $38,252.17 or 9.25% thereof: added to the annual license of $532.51 made a total license charge of $4,065.16 or 10.63% of the receipts.

As compared with the percentage of the licenses charged by the city to businesses of a different sort, the certified public accountant's report showed that the percentage of receipts at the Grand Theatre was 36.347 times the percentage of the average license fee on other businesses based on the amount of their gross receipts, and that of the State Theatre was 43.984 times as much. When the ratio is figured on the status of the two theatres combined, it is forty times such average. This does not consider the respective cost of operation of the different businesses and, therefore, a comparison of the impact of the license charges on them. But it was shown that the other businesses pay more ad valorem taxes to the city than the motion picture theatres and also have larger payrolls.

Those figures are not questioned, and there is little other material evidence on the issue involved. That is, whether the ordinance in question denies to complainant the equal and uniform protection and operation of the law or grossly and unlawfully discriminates against the complainant and others in complainant's classification and, therefore, violates the Fourteenth Amendment of the Constitution of the United States and the due process clause of the Constitution of Alabama. The theory is that the ratio of the license fees charged by the city on the receipts of the business of such theatres to that of other businesses, manifests an arbitrary discrimination against that class. That contention is stressed in many aspects and theories.

There is no contention that the charge is not embraced in the terms of section 751, Title 37, Code.

On the former appeal many legal and constitutional principles were asserted and are well supported by the authorities cited, and not necessary to repeat.

■ This is conceded to be a revenue measure, and not limited to the police pow-

er. In the case of Fox v. Standard Oil Co., 294 U.S. 87, 55 S.Ct. 333, 338, 79 L.Ed. 780, with reference to a license tax imposed by West Virginia on the owner of stores, the tax being graduated by the number of stores operated by him as a chain, the contention was made as here. The court, through Mr. Justice Cardozo, asserted principles here applicable, in part, as follows:

"When the power to tax exists, the extent of the burden is a matter for the discretion of the lawmakers. The subject was fully considered in Magnano Co. v. Hamilton, 292 U.S. 40, 54 S.Ct. 599, 78 L.Ed. 1109, decided at the last term. 'Even if the tax should destroy a business it would not be made invalid or require compensation upon that ground alone. Those who enter upon a business take that risk.' Alaska Fish Salting & By-Products Co. v. Smith, 255 U.S. 44, 48, 41 S.Ct. 219, 220, 65 L.Ed. 489, quoted in Magnano Co. v. Hamilton, supra, page 46 of 292 U.S., 54 S.Ct. 599. True the reservation was made (292 U.S. at page 44, 54 S.Ct. 599, 78 L.Ed. 1109) that an act might be so arbitrary as not to be an exercise of the taxing power at all, the form of a tax being a cloak for something else. Cf. Child Labor [Tax] Case, [Bailey v. Drexel Furniture Co.] 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817, 21 A.L.R. 1432. In respect of the challenged act, there is neither evidence nor even claim of any such abuse. On the contrary, the complainant has stated in its bill that the 'act is, in effect, a tax measure,' its validity or invalidity to be adjudged upon that basis."

The same broad power is fully recognized by the United States Supreme Court in various cases, such as State Board of Tax Com'rs v. Jackson, 283 U.S. 527, 51 S.Ct. 540, 75 L.Ed. 1248, 73 A.L.R. 1464, 75 A.L.R. 1536; Great Atlantic and Pacific Tea Co. v. Grosjean, 301 U.S. 412, 57 S.Ct. 772, 81 L.Ed. 1193.

■ We repeat from the quotation above, as here applicable, the principle that "Even if the tax should destroy the business (of an individual) it would not be made invalid or require compensation upon that ground alone. Those who enter upon a business take that risk." The sole attack made on the city license is the amount of the tax as compared with that charged other forms of business. But to be stricken on that ground it is also said in the Fox case, supra, that "an act might be so arbitrary as not to be an exercise of the taxing power at all, the form of a tax being a cloak for something else."

Appellant has cited various cases in support of its contention. In City of St. Petersburg v. Florida Coastal Theatres, Fla., 43 So.2d 525, the main point of the decision hinged on a construction of the statute as to whether it authorized such a license charge. But in Alabama it is so specifically authorized by section 751, Title 37, Code.

The case of Publix-Lucas Theaters, Inc., v. City of Brunswick, 206 Ga. 206, 56 S.E. 2d 254 is cited. That case emphasizes the legitimate nature and purpose of motion picture theatres. But in the main the opinion is a construction of the charter of the city as to whether it grants the right to make the charge, and therefore serves no purpose as an authority here.

■■ We do not in any respect question the nature of the business as being useful and harmless. But the rule is that "the only limitation on license taxation (for revenue) seems to be that it must not be so unreasonable as to show a purpose to prohibit a business which is not in itself injurious to public health or morals." Mayor & Aldermen of City of Birmingham v. Goldstein, 151 Ala. 474, 477, 44 So. 113, 114, 12 L.R.A.,N.S., 568. If it is prohibitive of a useful and harmless sort of business, its purpose is not to raise revenue and is not an exercise of the taxing power, as said in the Fox case, supra.

The case of Knapp v. City of San Bernardino, heavily relied on, seems to be an opinion of some inferior court of California, not reported anywhere and not accessible to us. But we are not willing to apply principles not supported by standard authority, especially when the United States

Supreme Court has laid down those applicable in respect to the Constitution of the United States.

In the case of County of Santa Clara v. Southern Pacific R. Co., 18 F. 385, 399, Id., 6 S.Ct. 1132, 118 U.S. 394, 30 L.Ed. 118, the opinion of the Circuit Court of Appeals gave expressions which have been analyzed and brought down to date in the Fox case, supra, and other cases recently handed down. The opinion on error by the United States Supreme Court in that case did not emphasize nor repeat them, but they do not conflict with recent decisions of that court. The whole theory is that taxation cannot be used as a means of oppression against a class and "a carefully devised scheme to produce such inequality" is not permissible.

As here applied, it means that a city cannot levy such a license as to manifest an intent to prohibit or oppress the motion picture industry or have that result. But to violate the Constitution the purpose and effect, as modernly expressed, must be not alone to exercise the power to raise revenue but to burden with prohibitive or oppressive charges a lawful and harmless sort of business. It is expressed in Magnano Co. v. Hamilton, 292 U.S. 40, 54 S.Ct. 599, 601, 78 L.Ed. 1109, as follows: (The Fourteenth Amendment) "is applicable to a taxing statute such as the one here assailed (an excise tax on all butter substitutes) only if the act be so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property."

Since we are dealing with the Constitution of the United States (as well as our own), the decisions of the United States Supreme Court construing and applying it are controlling on us, though we have no idea of questioning the sound quality of their reasoning. The expressions of this Court in that respect are in harmony with those decisions as pointed out on the former appeal. Special attention was called to American Bakeries Co. v. City of Huntsville, 232 Ala. 612, 168 So. 880, 882. We wish again to refer to that case to quote as follows: "This power to tax, while inhering in the state, cannot be so used by the state nor by a municipal corporation so as to 'embarrass and destroy useful and harmless occupations, that are essential to the prosperity of the people, and thus defeat the very purpose for which the power is conferred' "; and, " 'the power to license an occupation or privilege implies the right to fix the amount of the fee, and the action of a municipal body in fixing a fee will only be disturbed, in case of manifest abuse of that power.' " And, further, "a license tax, which the ordinance now under consideration attempts to impose on itinerant dealers, cannot be determined by the extent of the business of a single individual." To the same effect in some respects is State v. Pure Oil Co., 256 Ala. 534, 55 So.2d 843.

The validity of a license tax is not controlled by its effect on a certain person. City of Troy v. Western Tel. Co., 164 Ala. 482, 51 So. 523, 27 L.R.A.,N.S., 627. Some persons may well afford to pay the tax and do a lucrative and profitable business (apparently that is true of appellant), while others cannot. Gamble v. City Council of Montgomery, 147 Ala. 682, 39 So. 353.

We are of the opinion that on the basis of the undisputed facts shown by legal evidence the decree of the trial court was correct in holding that the license tax here involved does not violate the Federal or State Constitution as contended by appellant.

The decree should be affirmed.

The foregoing opinion was prepared by Foster, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, STAKELY and CLAYTON, JJ., concur.