104 So.2d 816

**AL MEANS, INC., et al.**

v.

**CITY OF MONTGOMERY et al.**

3 Div. 813.

Supreme Court of Alabama.

Aug. 28, 1958.

Hill, Hill, Stovall & Carter, Montgomery, for appellants.

**34**

Walter J. Knabe, Drayton N. Hamilton and Knabe & Nachman, Montgomery, for appellees.

SIMPSON, Justice.

This is a class action by merchants of the City of Montgomery challenging the constitutionality of Ordinance No. 34–57, adopted by the City Commission of Montgomery July 9, 1957, and by its terms made effective immediately upon its approval. The proceeding is by two separate bills for declaratory judgment, praying for a declaration of the constitutionality, legality, and effect of that ordinance; a permanent injunction against enforcement of the ordinance; and that the relief prayed for be granted to all members of the class similarly situated. The lower court consolidated the cases and sustained the respondents' demurrers to the bills, and the respondents have appealed from that decree.

The ordinance attacked purports to levy a license upon merchants and other persons who sell articles of merchandise at retail, the amount of the license being computed upon the gross sales of the business. The ordinance is in form and substance somewhat similar to the Alabama Sales Tax statute (Tit. 51, § 752 et seq., Code 1940). Section 5 of the ordinance provides that merchants have the option of absorbing the tax or adding the amount to the sales price of the goods and collecting the same from the purchasers. It is argued by appellants that this is merely a device to denominate the levy as a "license" rather than a "sales tax".

The pleadings reveal that a similar ordinance was previously adopted by the Commission on June 20, 1957, to take effect ten days thereafter and that within the ten days a petition protesting the ordinance was circulated among the voters of the city as provided for by the referendum provisions of Section 13 of the special statute under which the City Government of Montgomery is incorporated [Gen.Acts 1951, Vol. 2, p. 1426; Title 62, § 557(13), Code 1940 (Cum. Supp.)]. After this referendum petition was

circulated and filed with the Commission, the Commission repealed that ordinance, and on July 9, 1957, less than ten days after the repealed ordinance was to have become effective, adopted Ordinance 34–57, now under review.

Section One of the ordinance is the definitional section.

Section Two reads as follows:

"There is hereby levied, in addition to all other taxes of every kind now imposed by law, and shall be collected as herein provided, a privilege or license tax against the person on account of the business activities and in the amount to be determined by the application of rates against gross sales or gross receipts, as the case may be, as follows:"

and then lists the firms, persons, and corporations which are to be subject to the tax and the rates to be applied in each case.

Section Three contains a list of exemptions under the tax to which was included the exemption added by an August 6 amendment, giving rise to one of the objections raised by the appellants.

Section Five reads as follows:

"All persons subject to the provisions of this ordinance may add the tax herein levied to the sales price of the goods sold and collect the same from the purchasers, but this section is not mandatory."

This latter ordinance was made effective immediately upon adoption with no ten-day period intervening. Nor was there a recital in the ordinance that the ordinance was "for the immediate preservation of the public health or safety" nor a "statement of its urgency" as required by Section 13 of the statute as a condition under which ordinances were permitted to go into effect without the intervening ten-day period.

Notwithstanding the declared effectiveness of the ordinance, immediately upon its adoption referendum petitions by the requisite number of voters were presented to the City Commission and rejected. Two

bills were filed, the first in point of time by a single merchant, and the second by representative merchants. By consent of all parties the two complaints were consolidated, argued and heard as one under the class action. This proceeding attacks the ordinance on many grounds. The material ones are: It does not contain a statement of its urgency and is not for the immediate preservation of the public health or safety; a ten-day or greater period is not allowed between the adoption of the ordinance and its effective date, within which a petition protesting the passage of the ordinance could be presented; it imposes a sales tax which the City Commission is without lawful authority to pass; it constitutes double taxation; it is confiscatory and deprives the complainant of liberty or property without due process of law; it impairs the obligation of contracts.

The ordinance was amended in several respects on August 6, 1957, the more relevant change being with respect to certain sales made to non-residents for use and consumption outside the City of Montgomery to the list of exemptions in Section Three of the ordinance. We quote from the ordinance:

"There are, however, exempted from the provisions of this ordinance and from the computation of the amount of the tax levied, assessed or payable under this ordinance the following: * * *

"v. The gross proceeds of sales of tangible personal property which meet all of the following requirements and conditions, to wit:

"(A) (1) Sales which arise from orders initiated outside of the City of Montgomery and its police jurisdiction by a person who is a non-resident of the City of Montgomery and its police jurisdiction at the time of such orders;

"(2) Sales to a person who is a non-resident of the City of Montgomery or its police jurisdiction;

"(3) The tangible personal property so sold shall be used or consumed by such person entirely outside of the City of Montgomery or its police jurisdiction."

An amended bill with proper prayer for relief was filed after the amendment of the ordinance which, in addition to the grounds of attack mentioned in the original bill, challenged the ordinance as discriminatory "in that it does not apply to all persons equally and denies to your complainants and others similarly situated the equal protection of the laws and particularly in that it sets up unreasonable and completely arbitrary standards of application and exemption".

■ No question has been raised as to the nature of the suit as a class action or that it is for declaratory judgment, but we think the action is proper to bring the ordinance under review. See Equity Rule 31, Tit. 7, Appendix, Code 1940; City of Birmingham v. Fairview Home Owners Association, 259 Ala. 500, 66 So.2d 775; Code 1940, Tit. 7, §§ 156 and 157.

■ This case is here on an appeal from a ruling sustaining demurrer to the bill seeking a declaration of rights. Both parties wish the basic legal questions decided on this appeal so we will proceed to do so and declare the rights involved. Atkins v. Curtis, 259 Ala. 311, 66 So.2d 455; Evers v. City of Dadeville, 258 Ala. 53, 61 So.2d 78; Mobile Battle House v. City of Mobile, 262 Ala. 270, 78 So.2d 642.

■ This case, as indicated, concerns the validity of the aforesaid taxing ordinance of the City Commission of Montgomery. Some pertinent legal principles will be adverted to: The State may delegate its power to municipal corporations to license occupations within the limits of the city co-extensive with the power of the State to do so and this power is limited only by the due process and equal protection provisions of the Constitution. Smalley v. City of Oneonta, 253 Ala. 663,

46 So.2d 201, and cases there cited. Specific authority has been conferred upon municipal corporations to impose a license tax upon businesses conducted within its borders by Code 1940, Tit. 37, § 735. Municipal legislative power is delegated power derived from and part of the legislative power of the State. And the power of a municipality to license business or occupation can be exercised only where it is plainly conferred by the State, either in express terms or by necessary implication. It will not be inferred from terms of uncertain import. Alabama Gas Co. v. City of Montgomery, 249 Ala. 257, 30 So.2d 651. Taxing statutes are to be strictly construed against the taxing power. Gotlieb v. City of Birmingham, 243 Ala. 579, 11 So.2d 363. This rule is alike applicable to municipal taxing ordinances. Gotlieb v. City of Birmingham, supra; Anderson v. City of Birmingham, 205 Ala. 604, 88 So. 900. Where express power to levy and collect a particular tax is conferred, the power to levy and collect other taxes is excluded. Decatur Transit v. City of Gadsden, 249 Ala. 314, 31 So.2d 339.

■ The appellants therefore point out that municipalities are thus prohibited from levying any form of sales tax, since such a power is not expressly conferred upon cities. The appellants allege in their pleading that the ordinance in question is in reality a sales tax and therefore invalid. But on oral argument and in their briefs on appeal the appellants seem to have conceded that this case falls within the principles declared in Evers v. City of Dadeville, supra, which upheld the right of the City of Dadeville to impose a tax upon retail sales based upon gross receipts of a business under its authority to enact licenses. The key factor which was noted in that opinion was that the ordinance there considered provided that the tax could be absorbed by the merchant at his option. The state sales tax law requires that it be paid by the consumer and not so absorbed by the merchant. It is clear that under the decisions of this Court the substantive va-

lidity of the Montgomery ordinance must be upheld in so far as its characterization as a municipal license ordinance is concerned. Evers v. City of Dadeville, supra; Mobile Battle House v. City of Mobile, 262 Ala. 270, 78 So.2d 642. See Nachman v. State Tax Commission, 233 Ala. 628, 173 So. 25.

■■ Appellants contend that the license here imposed is double taxation. They say that each of the parties complainant held a "merchant's license", which on its face entitled each to sell at retail sundry articles of personal property in the City of Montgomery, and that the amount of their existing licenses was computed on the gross annual business of the licensee. Their argument is that Ordinance 34–57 superimposes upon this a license, the amount of which is based upon the gross retail sales of the licensees. But appellants concede that the governing principle is that double taxation is not prohibited, though to be avoided wherever possible. Paramount-Richards Theatres v. State, 256 Ala. 515, 55 So.2d 812. Appellants rest this attack upon a statement appearing in the case of City of Birmingham v. Hoffman & Robinson, 262 Ala. 104, 77 So.2d 354, 357, where it was said:

"A licensee may engage in two or more enterprises and each be separately taxed. [Cases cited.] But he should not be taxed on two different classifications for doing one sort of business. [Cases cited.]"

But in that case the issue was whether a junk and scrap business had been operated solely and exclusively as a scrap iron brokerage business for the purpose of determining whether it was subject to a certain license tax. The Court decided that the trial judge was justified in concluding from the evidence that the parties concerned had not for the years in question been engaged in a junk yard business and by the statement above, this Court merely said that a business which fell into only one classification or type should not be burdened with the payment of two different license taxes, one of which would not be, according to the facts of the case, applicable to that particular business. It is clear this license tax cannot be struck down on the ground that it constitutes a "double tax". Whether this result is "logical" or "fair" is not a question of judicial concern but should be addressed to the City Commission of Montgomery.

See also Woco Pep Co. of Montgomery v. City of Montgomery, 213 Ala. 452, 105 So. 214; 53 C.J.S. Licenses § 2, p. 448, where the general principle is stated to the effect that a license is a means of regulating and taxing privileges and occupations and is not a contract or property right in a general sense that is protected by contract laws.

■ Appellant's next serious attack upon the ordinance is that it is confiscatory and deprives complainants of liberty or property without due process of law in violation of the constitutions of the United States and Alabama. But the appellants have not set out any facts as to the confiscatory nature of the tax. They argue, however, that the tax is invalid as burdensome since there is no requirement that it be passed on to the consumer, as in the sales tax. But the appellants thereby take an obviously inconsistent position with their insistence on the rule that a city has no authority to impose a sales tax directly upon consumers. This Court in Evers v. City of Dadeville, supra, said [258 Ala. 53, 61 So.2d 82]:

"The privilege tax levied by the ordinance on its face not being in excess of the amount authorized by the statute, is presumptively valid, in the absence of allegations of fact, showing that the tax is excessive, arbitrary or otherwise wanting in validity. [Cases cited.] No such facts are alleged in the bill."

Even if it could be shown that the license tax would destroy the business of any of the complainants, the ordinance would not be made invalid upon that ground alone.

"Those who enter upon a business take that risk." Bessemer Theatres, Inc., v. City of Bessemer, 261 Ala. 632, 75 So.2d 651, 656. The rule in this respect is that "the only limitation on license taxation (for revenue) seems to be that it must not be so unreasonable as to show a purpose to prohibit a business which is not in itself injurious to the public health or morals". Mayor & Aldermen of City of Birmingham v. Goldstein, 151 Ala. 473, 44 So. 113, 114, 12 L.R.A.,N.S., 568; Bessemer Theatres, Inc., v. City of Bessemer, supra.

 Appellants urge that the amendment of August 6 to the ordinance causes that ordinance to be violative of the equal protection clause of the Fourteenth Amendment of the United States Constitution. This theory of the appellants' case is concerned with the exemption feature found in Section 3, v, (A), of Ordinance 34–57. Appellants claim that "[t]his ordinance, as amended, is arbitrary and capricious in taxing similar sales not falling within the letter of the exemptions. No reasonable or proper basis for exempting some such sales and taxing the remainder is included. The ordinance is not alike applicable to all in the same class."

They develop this argument through construing the first three paragraphs of that exemption section as exempting sales made by "salesmen who are non-residents of the City of Montgomery" and then contending that the residence of the salesman is not a material and substantial distinction and difference reasonably related to the subject matter. They urge that resident salesmen or employees of resident salesmen are thus discriminated against. The error of appellants' argument here is that it is based upon a misconstruction of the paragraph, which does not make the salesman's residence or non-residence a criterion under the ordinance. That paragraph merely exempts sales "which arise from orders initiated outside of the City of Montgomery and its police jurisdiction by a person who is a non-resident of the City of Montgomery and its police jurisdiction at the time of such orders". The test of that paragraph is: Where the sale was made in the sense of where the order for sale was initiated.

Appellants' objection to Section 3, v, (A), (2), is that under stipulated conditions it "exempts sales made to a *non-resident* of the City of Montgomery and under identical conditions the ordinance taxes sales made to one who is a *resident*, thereby discriminating against the latter". But the tax by its terms does not make it mandatory that the tax be passed on to the consumer.

Then appellants attack Section 3, v, (A), (3), by saying that under stipulated conditions it "exempts personal property used or consumed outside the City of Montgomery and under identical conditions taxes such articles when used or consumed within the City of Montgomery. This use or consumption is in no way related to the sale. Rather it concerns an activity of the purchaser or other successive owner or holder of the property, an activity over which the licensee has no control." We cannot agree with this contention. This paragraph complements the remainder of the section in much the same manner as the State Use Tax does to the State Sales Tax. Paramount-Richards Theatres v. State, 256 Ala. 515, 55 So.2d 812.

This Court will presume in favor of the constitutionality of a law until the contrary appears, and the burden is upon one asserting unconstitutionality. Frazier v. State Tax Commission, 234 Ala. 353, 175 So. 402, 110 A.L.R. 1479. The limitation on the discretion of the Legislature and on municipal authorities, in making of classification in statutes or municipal ordinances, is that the same be (1) not arbitrary, (2) not a subterfuge to shield one class and unduly burden another, or (3) to unlawfully oppress in its administration. Such is the rule that obtains in state and federal courts. Frazier v. State Tax Commission, supra; Garrett v. Colbert County Board of Education, 255 Ala. 86, 50 So.2d 275; Woco Pep Co. of Montgomery v. Butler, 225 Ala. 256, 142 So. 509. The state may tax all, or it may select for taxation certain classes and

leave the other untaxed. Considerations of general policy determine what the selection shall be in such cases, and there is no restriction upon the power of choice, unless one is imposed by the Constitution. The legislative body of the city, having selected and duly classified the exemption indicated, uniformity and equality of taxes imposed on other classes is preserved, and thus it violates no provision of organic law. Frazier v. State Tax Commission, supra. It is essential that the classification itself be reasonable and not arbitrary, and be based upon material and substantial distinctions and differences reasonably related to the subject matter of the legislation or considerations of policy, and that there be uniformity within the class. Opinion of the Justices, 252 Ala. 527, 41 So.2d 775. · Mr. Justice Stone, speaking for the United States Supreme Court in Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 872, 81 L.Ed. 1245, 109 A.L.R. 1327, in which that Court upheld the Alabama Unemployment Compensation Act against the attack that it violated the due process and equal protection clauses of the Fourteenth Amendment to the Federal Constitution, said:

"It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. [Cases cited.] This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation. [Cases cited.]

"Like considerations govern exemptions from the operation of a tax imposed on the members of a class. A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it. [Cases cited.]

"This restriction upon the judicial function, in passing on the constitutionality of statutes, is not artificial or irrational. A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function."

In speaking of the exemption of particular classes of employers from the operation of the statute, Justice Stone continued:

"Reasons for the selections, if desired, readily suggest themselves. Where the public interest is served one business may be left untaxed and another taxed, in order to promote the one, * * * or to restrict or suppress the other, [cases cited.] The legislature may withhold the burden of the tax in order to foster what it conceives to be a beneficent enterprise. This Court has often sustained the exemption of charitable institutions [cases cited] and exemption for the encouragement of agriculture [cases cited]. Similarly, the legislature is free to aid a depressed industry such as shipping."

What was said by Justice Stone with respect to state legislatures is equally applicable here to municipal legislative councils.

Appellee correctly argues that "purpose of the amendment was to remove inequi-

ties such as those alleged by these appellants, which might arise because many businesses, upon which the privilege license tax falls, do a substantial volume of business with non-residents. The imposition of the tax in such circumstances would place Montgomery merchants in an unfavorable competitive position with merchants in other cities where they enjoyed a substantial volume of business. Indeed, both before and after the adoption of this amendment, appellants themselves sought a judicial declaration that the existing ordinance did not apply to sales made outside the City of Montgomery to non-residents of the City of Montgomery and its police jurisdiction." The inconsistency of the appellants' position is apparent when they say in their brief, "the City Commission took apparent cognizance of the impropriety and illegality of charging upon sales made wholly outside the city and its police jurisdiction and passed an amendment which undertook to exempt such sales under some conditions." The plain purpose of the amendment is to grant an exemption from the proceeds of out of city sales transactions and to relieve business operations which derive no protection and benefit from the City of Montgomery from the imposition of taxes which go to maintain the City Government; and, at the same time, to insure against tax avoidance of a type revealed in the administration of similar taxes. The entire attempt of the Montgomery ordinance is to tax the gross proceeds of Montgomery's sales transactions on an equal basis.

All requirements must be met before the gross proceeds of the sales are to be exempt from the tax. In short, the buyer must place the order outside the city; he must be a non-resident; and the property must be used or consumed outside the City of Montgomery.

Appellants cite Frazier v. State Tax Commission, supra, but that case upheld the validity of Subsection (k) of Section 4 of the Alabama Retail Sales Tax Act in the face of an attack that it denied the equal protection of the laws under the fourteenth Amendment. The cases cited by appellants, Eliasberg Bros. Mercantile Co. v. Grimes, 204 Ala. 492, 86 So. 56, 11 A.L.R. 300; Woco Pep Co. of Montgomery v. City of Montgomery, 213 Ala. 452, 105 So. 214; Rochell v. City of Florence, 237 Ala. 635, 188 So. 247, and City of Birmingham v. Birmingham Business College, 256 Ala. 551, 56 So. 2d 111, are inapposite, in that their holdings are not applicable to a situation such as this, where the objection is that an exemption of out-of-city sales in a municipal license tax ordinance denies to the *residents* of the City of Montgomery the equal protection of the laws.

Having decided that this ordinance does not deny equal protection, it is unnecessary to go into the appellants' discussion concerning whether an invalid portion of the ordinance will render the whole ordinance invalid.

▆▆▆▆ Appellants contend that the ordinance violates Code 1940, Tit. 62, § 557 (13) (Cum.Supp.), or the Enabling Act, as it is called, in that it was not and did not purport to be for the immediate preservation of the public health or safety and did not contain a statement of urgency, notwithstanding which it was declared to be effective immediately upon adoption; that *referendum petitions were signed and presented by the requisite qualified voters of Montgomery within ten days of its adoption* as provided for by Section 13 of the Enabling Act. The court below held that the City of Montgomery was not required to follow the referendum procedure contained in the Act on the ground that the Act was not intended to apply to revenue measures, Section 212 of the Constitution of Alabama having proscribed such an application. The court below was correct in its holding.

Section 212 of the Constitution of Alabama provides:

"The power to levy taxes shall not be delegated to individuals or private corporations or associations."

In effect, what the appellants contend for is that the voters of the City of Montgomery be given the power of review by referendum over revenue ordinances.

The power to levy taxes has been validly delegated to municipalities. Schultes v. Eberly, 82 Ala. 242, 2 So. 345. Code 1940, Tit. 37, § 735 vests in municipalities the power to levy license taxes upon businesses, trades, professions, etc. And this Court has recognized the authority of a city to ordain a privilege license tax upon gross receipts in the form of a sales tax, provided that the merchant taxed has the option to either absorb the tax or pass it on to the consumer. Evers v. City of Dadeville, supra. The municipalities' power to tax is a legislative power, delegated to it by the state legislature. Section 212 of the State Constitution forbids the municipality from delegating this power further to individuals, private corporations, or associations. In In re Opinions of the Justices, 232 Ala. 56, 166 So. 706, 709, it was held that a proposed tax statute which would submit to the people at an election the question of whether the tax should become effective was unconstitutional and void as an invalid delegation of the legislative powers of the Legislature. It was said in that case:

"When all is said, the referendum here provided is an attempted delegation of legislative power, which, if once sanctioned, may easily lead to the breaking down of a representative government, a casting upon the people, themselves, the duty to leave their ordinary avocations, and devote them to a study of the policy as well as administrative details of laws they are called upon to enact or reject, with no opportunity to amend. Most certainly, it tends to lower the sense of responsibility of the legislator chosen by the people to counsel with his fellows and legislate for his constituents."

The appellants concede that the effect of Section 212 of the State Constitution has a prohibitive effect upon the enactment of a revenue statute as In re Opinions of the

Justices, supra, declares. But they seem to argue that the extent of proscription of Section 212 does not include a referendum giving the people a choice to *repeal* a validly enacted revenue ordinance. This argument is vulnerable, however, to the holding of Hawkins v. City of Birmingham, 239 Ala. 185, 194 So. 533, 535, which affirmed a judgment of the lower court awarding a writ of prohibition against any further procedure in the Probate Court of Jefferson County in relation to a petition looking to an election to be held for a repeal of a tobacco tax ordinance which had been enacted by the City of Birmingham. The court in that case noted a statute which is now Code 1940, Tit. 37, § 466 (Section 2011 of the Code of 1923), authorizing any town or city to borrow money for temporary or lawful purposes, issue notes therefor, and pledge as security any authorized special tax or license, and as a part of the contract "agree to annually levy, collect and apply" such tax or license to the payment thereof, so long as the same or any part thereof remains unpaid. Prior to the enactment of that statute, the Legislature in 1915 had passed a general initiative and referendum statute. In speaking of the initiative and referendum statute, the Court said:

"It is clear enough the lawmakers did not intend by the initiative feature of the general statute to authorize an ordinance at variance with our Constitution and out of harmony with so fundamental a principle as the non-impairment of contracts. And it is equally clear the legislature did not intend to grant authority to pledge the tax and its continuous levy for borrowed money, and at the same time say to the lender the authorized pledge may be repudiated by the initiative and referendum and the pledge subject to be destroyed. Certainly, in reason and common sense, *the power to repeal a tax cannot co-exist with a power of the city commission to pledge the tax and agree to its continuous levy.* These later statutes must, therefore, be construed as superseding any initiative

feature of the general law." [Emphasis supplied.]

On rehearing, the Court made clear that its holding did not apply merely to the case where the money *had been* borrowed and the taxes *had been* pledged. We said:

"We think, and so hold, that the very existence of the power in the city commission to borrow and pledge the taxes, *whether the power be exercised or not,* is inconsistent with the power of the voters to repeal, and thereby prevent the continuance of the tax as fixed by the commission."

The appellants further seek to make a distinction between "repeal" and "suspend". In their brief they say, "It [Section 13] does not delegate the power to impose the tax; neither does it delegate the power to repeal a tax already in effect. Rather it gives the electors the right *to suspend and make inoperative* an ordinance, including a revenue ordinance, before it goes into effect. Once the ordinance has taken effect, the electors are given no right to repeal it." [Emphasis supplied.]

This exercise in semantics obscures the fact that Section 13 provides that if such a petition is presented in due time and the ordinance is thereby "suspended" from going into operation, the city commission is then compelled to either entirely repeal the ordinance or present it to the people at an election. Such ordinance would not go into effect or become operative unless a majority of the qualified electors voting on the same voted in favor of it. Thus it is clear that the final validity of the ordinance would depend upon the contingency of approval by the electors of the city. The filing of the petition robs the commission of any legislative discretion over the revenue measure except to allow it to either entirely repeal or to submit to election. This is patently a delegation of the commission's legislative power and an illegal delegation to and exercise by the individuals comprising the electorate of the city.

When the Legislature passed the Enabling Act upon which the appellants rely, it obviously knew of the constitutional proscriptions against referenda where revenue measures were concerned. It is a well-settled judicial rule that courts in construing a legislative enactment will construe it in such a way as to uphold its validity if at all possible. Abramson v. Hard, 229 Ala. 2, 155 So. 590; Standard Oil Co. v. State, 178 Ala. 400, 59 So. 667. The conclusion follows that the referendum procedure contained in the Enabling Act did not apply to revenue measures.

Having decided that Section 13 of the Enabling Act is not applicable with respect to the ordinance in question, as it pertains to revenue, we do not reach the matter raised by appellants as to the failure of the ordinance to include a statement of its urgency or as to whether in fact it was for the immediate preservation of the public health or safety.

The appellants have attempted to fortify their argument with allegations as to the prior history of Ordinance 34–57. The objective of these averments is apparently to show that the Montgomery City Commission tried to avoid the procedural requirements of Section 13 of the Enabling Act in the adoption of the ordinance. But our holding that Section 13 of the Enabling Act was not intended by the Legislature to apply to revenue measures renders this historical matter irrelevant.

The contention of the appellants that the taxing ordinance was not validly enacted, therefore, must fall.

We find no error in the decree below.

Affirmed.

All the Justices concur.