This is an appeal by the City of Mobile from a summary judgment entered in favor of defendants GSF Properties, Inc. ("GSF"), and Great Southern Federal Savings Bank ("Great Southern"). We affirm.
The City of Mobile filed a declaratory judgment action claiming that these defendants and a defendant known as Dauphin Isle, Ltd., owed the City past due license taxes of more than $80,000. The City's claim for the license taxes arises from the operation of a Ramada Inn in Mobile during a two-year period between 1984 and 1986.
Dauphin Isle is an Alabama limited partnership whose sole asset was the Ramada Inn. The sole general partner of Dauphin Isle is an entity named Joli-Mobile, Inc. In turn Joli-Mobile, Inc., is wholly owned by Joli-Hospitalities, Inc. Hence, Dauphin Isle, Joli-Mobile, and Joli-Hospitalities are essentially one and the same. Joli-Hospitalities was the entity actually managing and operating the Ramada Inn during the time the claimed taxes accrued, although Dauphin Isle was the entity named on the 1984 and 1985 business licenses.
To procure the Ramada Inn, Dauphin Isle borrowed money from Great Southern. With the borrowed funds, Dauphin Isle procured the motel facility and a long-term ground lease of the property on which it is located.
Dauphin Isle executed a mortgage and assignment of the lease and leasehold to Great Southern. By January of 1985, Dauphin Isle was in default on the debt to Great Southern. By March 1985, Dauphin Isle was in default of the ground lease.
In March 1985, Great Southern declared the entire debt due under the acceleration clause of the note and began advertising the property for foreclosure. Later, Great Southern granted time extensions to Dauphin Isle and tried to help Dauphin Isle sell the property. The attempts to sell the property were unsuccessful. Eventually, the property was readvertised, but on the eve of foreclosure, Dauphin Isle filed a petition of bankruptcy.
Thereafter, Great Southern filed a motion in the bankruptcy court for relief from the automatic stay so that Great Southern could foreclose on its mortgage. The bankruptcy judge granted Great Southern's motion on January 15, 1986. Great Southern foreclosed Dauphin Isle's mortgage on March 3, 1986.
On April 25, 1986, Great Southern conveyed the Ramada Inn property to GSF Properties, a wholly owned subsidiary of Great Southern. GSF Properties hired Motel Management Companies to operate the motel. It is undisputed that GSF Properties has paid all the license taxes that have accrued since GSF Properties took over the property.
On June 19, 1986, the City of Mobile filed the declaratory judgment action, asking the court to determine the amount of license taxes due the City and to impose a lien on the property pursuant to §§ 11-51-96 and 11-51-150, Code of Alabama (1975).
Subsequently, on November 14, 1986, the trial court granted summary judgment for *Page 835 
defendants Great Southern and GSF Properties, Inc. The City brought this appeal.
The City claimed below that a conspiracy existed between Great Southern and Dauphin Isle to evade the payment of license taxes due the City. The City imposes a license tax on hotels and motels based upon gross receipts from renting rooms, as well as a business license. Alternatively, the City argued that Great Southern and Dauphin Isle are one and the same, and that, therefore, Great Southern was responsible for the taxes collected by or imposed upon Dauphin Isle under an alter ego theory. The record is entirely devoid of any evidence to support either theory. All of the evidence indicates that the relationship of Great Southern and Dauphin Isle was that of creditor-debtor/mortgagee-mortgagor. There is nothing to the contrary shown by the evidence. In support of its motion for summary judgment, Great Southern offered an affidavit of one of its officers, which was not controverted. This evidence established that, with the exception of the loan transaction on the Ramada Inn, Great Southern had no business with Dauphin Isle, and that it had never managed, directed, or instructed Dauphin Isle with respect to any matter. Accordingly, there was no error in the trial court's granting summary judgment on this issue. City of Rainbow City v. South Hawk, Inc., 394 So.2d 10
(Ala. 1981).
A more serious argument is advanced by the City. It insists that the trial court erred in its determination that the City's statutory lien for unpaid license taxes may not be enforced against the mortgagee of the property on which the licensee operated.
We are persuaded, as was the trial court, by the reasoning advanced by GSF in support of its argument with respect to the second issue:
The facts material to this issue are not in dispute. The City claims that some $80,000 is owed to it as room occupation license tax and gross receipts license tax from February 1984 through February 1986. During this time, the motel was being managed by management corporations engaged by the mortgagor, Dauphin Isle. From March 1986, after the property was foreclosed, to the date of disposition of the case below, Great Southern or its subsidiary GSF has paid the taxes. The City seeks to impose a lien against the real estate for the back taxes that were incurred previously by the licensee-mortgagor Dauphin Isle or its related company.
The City contends that Ala. Code 1975, § 11-51-96, gives municipal corporations a license tax lien that is superior to all other liens, including a prior mortgage lien. To accept this construction of § 11-51-96 would be to disregard other general laws, would be inconsistent with the intent of the legislature in the adoption of general taxing legislation, and would raise constitutional questions that are not necessary to a resolution of this dispute.
Section 11-51-96, Ala. Code 1975, provides:
 "On all property, both real and personal, used in any exhibition, trade, business, vocation, occupation or profession for which a license is or may be required, municipal corporations shall have a lien for such license, which lien shall attach as of the date the license is due and shall be superior to all other liens, except the lien of the state, county, and municipal corporations for taxes and the lien of the state and county for licenses. Such lien may be enforced by attachment."
License tax statutes should be construed in pari materia.
Section 11-51-96 cannot be applied according to the interpretation urged by the City without conflicting with other statutory licensing provisions. The first part of § 11-51-96
does appear, as the City asserts, to give municipal corporations a superior lien on all property used in a business
for which a license is required. That construction would give the City's lien for license taxes priority over the lien of a prior mortgagee. Yet, in the second part of this same provision, the municipalities' license tax lien is expressly subordinated to state and county license tax liens. The state and county themselves do not have a superior license tax lien. In fact, the state and county's lien for license *Page 836 
taxes specifically attaches only to the property of the person
incurring the tax liability. Ala. Code 1975, § 40-1-2 (b). Thus, since a municipal corporation's lien for license taxes is subordinate to the state's equivalent lien, it follows that a municipal corporation's lien cannot be superior to those liens as to which the state's lien is not superior. A contrary interpretation would be illogical.
Clearly, the Alabama legislature has contemplated that prior mortgage liens are to be superior to both state and municipal license tax liens. In the Tax Enforcement and Compliance Act ("TECA"), enacted in 1983, the legislature reiterated its position that state license lien rights are restricted to the property of actual licensees, and are subordinate to pre-existing mortgages. Ala. Code 1975, §§ 40-29-1, -23. By its terms, TECA applies to "every public tax, license or fee . . . levied under the provisions of any existing or hereafter enacted law which is codified in Title 40 or any other title and is collectible by the commissioner of revenue." Ala. Code 1975, § 40-29-2. To secure the far-reaching effect of TECA, the legislature added:
 "In the event of any conflict between the provisions of this chapter and those of any other specific statutory provisions contained in other chapters of Title 40, or of any other title, it is hereby declared to be the legislative intent that, to the extent such other provisions are inconsistent with or different from the provisions of this chapter, the provisions of this chapter shall prevail."
Ala. Code 1975, § 40-29-2 (emphasis added). Therefore, even though TECA does not specifically refer to municipal liens, TECA's terms are nevertheless applicable in construing §11-51-96. In addition, the legislature created a license tax enforcement mechanism for municipalities in Ala. Code 1975, §§11-51-150 et seq., which clearly contemplates enforcement against the actual persons conducting the business, occupation, trade, or profession. Notwithstanding the fact that the enforcement remedies are cumulative, the tenor of these legislative provisions is to restrict the enforcement of license taxes to the property of the actual licensee.
Furthermore, to hold that municipalities' license tax liens are superior to all others is inconsistent with other sections of the Code. For example, in Ala. Code (1975), §§ 11-51-180 etseq., the State is given the authority to collect certain municipal license taxes, including those concerning the operation of a motel. The State's authority to collect these taxes, however, is subject to the general provisions governing the state's authority to collect license taxes. Id. Thus, if the State exercised this authority and secured a license tax lien against a motel operator, the State's lien would be restricted to the licensee, and would be subordinate to an existing mortgage. Yet, if the City's argument here prevails, a municipal corporation enforcing the very same lien would have greater authority to collect the license taxes than the State. The City's position is untenable, because a municipal corporation's power to collect license taxes is derivative of the State's power to collect such taxes, not vice versa.Alabama Farm Bureau Mutual Casualty Insurance Co. v. City ofHartselle, 460 So.2d 1219, 1222 (Ala. 1984).
Established rules of statutory construction require that statutes be construed together and reconciled, if possible.Siegelman v. Folmar, 432 So.2d 1246, 1249 (Ala. 1983); State v.Reid, 284 Ala. 191, 195, 223 So.2d 594 (1969). The statutes in question are reconciled if the lien created in § 11-51-96, similar to the liens created by § 40-1-2 and TECA, is enforceable only against the property of the actual person liable for license taxes. Hence, we hold that the City's license tax lien is not enforceable against the property of an existing mortgagee of the property on which the licensee operated.
A municipal corporation's power to collect license taxes is derived solely from the state. Municipalities have no inherent power of taxation, although the state may confer upon municipalities the power to tax. Alabama Farm Bureau MutualCasualty Insurance Co. v. City of Hartselle, 460 So.2d 1219,1222 (Ala. 1984); *Page 837 Town of Hackleburg v. Northwest Alabama Gas District, 277 Ala. 355,357, 170 So.2d 792 (1964). See also, Al Means, Inc. v.City of Montgomery, 268 Ala. 31, 36, 104 So.2d 816 (1958) ("[m]unicipal legislative power is delegated power derived from and part of the legislative power of the State"). When the State does confer upon municipalities the power to tax, the presumption is that the State delegates only such power as the State itself possesses. See Town of Hackleburg, 277 Ala. 355,357, 170 So.2d 792, 793 (1964); Al Means, Inc. v. City ofMontgomery, 268 Ala. 31, 36, 104 So.2d 816 (1958):
 "The State may delegate its power to municipal corporations to license occupations within the limits of the city co-extensive with the power of the State to do so and this power is limited only by the due process and equal protection provisions of the Constitution."
268 Ala. at 36, 104 So.2d at 820. Also, in Town of Hackleburg, which involved a city's power to collect license taxes, we stated:
 "If the taxing power delegated [to a municipality] is not limited, it includes all the taxing power possessed by the State."
277 Ala. at 357, 170 So.2d at 793. Thus, even if there were no other limitations upon the power of municipalities to collect license taxes, such municipal power would be limited to the power possessed by the State.
In the instant case, the State does not possess the power to look beyond the property of the actual licensee in enforcing its license taxes. Nor does the State's license tax lien take priority over a pre-existing mortgage. The City may not rely on § 11-51-96 to establish taxing power greater than that possessed by the State.
Portions of § 11-51-96 are facially inconsistent with each other, and § 11-51-96 is incongruent with other sections of the revenue statutes. Since there is a reasonable doubt as to the scope of § 11-51-96, the Court must look at the rules regarding the construction of tax statutes.
It is a longstanding rule that tax statutes must be interpreted most favorably to the taxpayer and against the taxing authority. Ex Parte Zewen Marine Supply, Inc.,477 So.2d 417, 419 (Ala. 1985); Eagerton v. Terra Resources, Inc.,426 So.2d 807, 809 (Ala. 1983); Misener Marine Construction, Inc.v. Eagerton, 423 So.2d 161, 163 (Ala. 1982); see also Al Means,Inc. v. City of Montgomery, 268 Ala. 31, 36, 104 So.2d 816
(1958) ("Taxing statutes are to be strictly construed against the taxing power" and "the power of a municipality to license [a] business or occupation can be exercised only where it is plainly conferred by the State, either in express terms or by necessary implication. It will not be inferred from terms of uncertain import.").
The rule that tax statutes are to be construed in favor of taxpayers and strictly against the taxing power applies to municipal corporations and municipal taxing ordinances. AlMeans, Inc. v. City of Montgomery, 268 Ala. 31, 36,104 So.2d 816 (1958); State ex rel. Woodruff v. Centanne, 265 Ala. 35,38, 89 So.2d 570 (1956).
Consistent with the rules governing construction of a tax statute, Alabama courts have refused to expand the language and scope of a tax statute. Misener Marine Construction, Inc. v.Eagerton, 423 So.2d 161, 163 (Ala. 1982). In State v. Crenshaw,287 Ala. 139, 142, 249 So.2d 622 (1971), this Court construed a tax statute against the State, citing the rules of construction favoring the taxpayer. As in the case at hand, in Crenshaw the Court was faced with interpreting a tax provision, portions of which conflicted with each other. The Court approached the problem by stating the following:
 "It is settled that if two provisions of a tax statute are in conflict, the legislative intent must be found, if possible, from the whole act, considering its history, nature, purpose, etc., having in mind that such statutes are construed in favor of the taxpayer. . . . [In addition, where] two sections or provisions of an Act are conflicting . . . the last in order of arrangement controls."
287 Ala. at 142, 249 So.2d at 624. Using the established rules of construction set *Page 838 
out above, the Court construed the tax statute in favor of the taxpayer and against the State. Id.
Applying the same rules of construction, we must construe §11-51-96 most favorably for the taxpayer and against the City. The language that subordinates municipal liens to State liens follows the language that gives municipalities a superior lien, referred to by the parties to this appeal as a "super priority" lien. Our construction of the license tax statute must be restrictive, not expansive. In sum, we read § 11-51-96 as giving municipalities a lien only against the property of the actual licensee, and not against the property interest of a pre-existing mortgagee.
In light of the entire statutory scheme surrounding the establishment and enforcement of license taxes, it must be concluded that the legislature did not intend in § 11-51-96 to give municipalities a superior lien or "super priority" lien for enforcement of municipal license taxes.
When reduced to its substance, the City's argument that municipalities have a superior lien or super priority license tax lien rests entirely on the broad language in § 11-51-96. There is no statement in § 11-51-96 that suggests what the legislature intended to accomplish through this provision. There is no legislative history to rely on. There are no cases interpreting the scope of § 11-51-96.
There is, however, language in other license tax provisions, including TECA, that suggests that the legislature did not intend to give municipalities a superior or super priority license tax lien. See Ala. Code 1975, §§ 11-51-150 et seq. (these provisions clearly contemplate enforcement only against the persons actually operating the occupation, trade, etc.); Ala. Code 1975, § 40-1-2 (license tax liens "shall not be valid against any mortgagee . . . until after the time a notice thereof has been filed by the department of revenue or otheragency of the state or county"); Ala. Code 1975, §§ 40-29-20, -23 (State liens, other than for ad valorem taxes, shall not be valid against any purchaser, holder of a security interest, until notice thereof has been filed by the commissioner of revenue or his delegate, and shall not be perfected as against any purchaser or holder of a security interest until the date such notice is filed). It is both necessary and proper for the Court to look at the other license tax provisions in interpreting § 11-51-96. Tate v. Teague, 431 So.2d 1222, 1225
(Ala. 1983). As the Court in City of Hartselle stated:
 "In construing [licensing statutes], it is necessary to examine the entire taxing scheme. . . . The court must look to the entire statutory scheme instead of isolated phrases or clauses."
City of Hartselle, 460 So.2d at 1225 (citing Opinion of theJustices No. 153, 264 Ala. 176, 85 So.2d 391 (1956)). Clearly, the broad language in § 11-51-96 is an isolated phrase. The legislature's message in the rest of its statutory scheme is that license taxes may be enforced only against the person who incurred the license tax liability.
We affirm the trial court's judgment that the City's license tax lien does not extend beyond the property of the actual licensee and does not take priority over a prior mortgage.
The judgment is affirmed.
AFFIRMED.
JONES, ADAMS, HOUSTON and STEAGALL, JJ., concur.