MONROE, C. J.
Defendant was prosecuted -under an indictment which reads in part:
“That Louis McCormick * * * from January 1 * * * to March 23, 1917, * * * in the parish and state aforesaid, being * * * a male person, did, * * * willfully and feloniously, habitually, associate with prostitutes- *581 and habitually loiter in or around a house of prostitution, in violation of Act 226 of * * * 1912,” etc.
The statute thus mentioned is entitled “An act to define and punish vagrancy and to provide penalties for the violation hereof,” and it declares:
“Section 1. * * * That any male person who habitually associates with prostitutes, or who habitually loiters in or around houses of prostitution, or who, being without visible means of support, lives with a prostitute, shall be deemed guilty of vagrancy.”
Defendant moved to quash the indictment on the ground that the statute quoted, in so far as here applicable, is unconstitutional, in that it attempts to abridge, deny, or impair the rights, privileges, and immunities of the citizen and invade those rights of personal liberty which are guaranteed to him by articles 1, 2, and 15 of the Constitution of the state and the Fourteenth Amendment to the Constitution of the United States. The trial judge sustained that view and quashed the indictment, and the state has appealed.
The articles of the state Constitution which are relied on declare that government originates with the people, is founded on their will alone, and is instituted solely for the good of the whole; that its only legitimate end is to secure justice to all, preserve peace, and promote the interest and happiness of the people; that no person shall be deprived of life, liberty, or property, except by due process of law; and the Fourteenth Amendment to the Constitution of the United States declares that all persons born or naturalized in the United States are citizens thereof and of the state in which they reside; that no state shall abridge the privileges and immunities of citizens of the United States, or deprive any person of life, liberty, or property without due process of law, or deny to any person within its jurisdiction the equal protection of its laws.
[1] “The legitimate exercise of the police po-wer is not subject to restraint by constitutional provisions for the general protection of rights of individual life, liberty, and property.” State v. Schlemmer, 42 La. Ann. 1166, 8 South. 307, 10 L. R. A. 135. And the Fourteenth Amendment to the Constitution of the United States does not interfere with the proper exercise of that power. 6 R. C. L. pars. 193, 194; L’Hote v. New Orleans, 177 U. S. 596, 20 Sup. Ct. 788, 44 L. Ed. 903.
“However difficult it may be,” say the-authorities, “to render a satisfactory definition of ‘police power,’ there seems to be no doubt that it extends to the protection of the lives, health, and property of the citizens, and to the preservation of good order and the public morals.” R. C. L. pax-. 199.
“This power also clearly extends to the regulation or suppression of houses of prostitution,” etc. Id. par. 201.
If, in the interest of the public health, the state may establish hospitals for the segregation of persons affected with leprosy, smallpox, and other infectious diseases, it would hardly be contended that it could not mate such measures .effective by excluding therefrom, under penalty, persons lilrely to contract and communicate those diseases. If it may, in the interest of the public morals and health, regulate or suppress houses of prostitution, why may it not, as a means of regulation, or partial regulation, prohibit “male persons” from associating with the prostitutes and loitering in or about such houses? In L'Hote v. New Orleans, supra, the Supreme Court of the United States, speaking through Mr. Justice Field, and dealing with the interests, not of the associates of the prostitutes and loiterers about their houses, but with the rights of a citizen whose property was injuriously affected by the establishment of a “restricted district” in its vicinity, said:
“Obviously the regulation of houses of ill fame, legislation in respect to women of loose character, may involve one of three possibilities: First, absolute prohibition; second, full freedom in respect to place; * * * or third, a restriction of the location of such houses to *583 certain defined limits. Whatever course of conduct the Legislature may adopt is, in a general way, conclusive upon all courts, state and federal. It is no part of the judicial function to determine the wisdom or folly of a regulation by the legislative body in respect to matters of a police nature.”
[2] There are other decisions of the same august tribunal, and of the other courts of the country, to the effect that the aid of the judiciary may be invoked to protect rights guaranteed by Constitutions from the arbitrary abuse of the police power, but the principle remains that the legitimate exercise of that power is a function of the legislative department, with the discharge of which the judiciary has no mission to interfere, and, as we are of opinion, that in the present instance the power has been legitimately and properly exercised, we conclude that the statute complained of should be sustained.
It is therefore ordered that the judgment appealed from be set aside, the indictment reinstated, and the case remanded to be proceeded with according to law and to the views hereinabove expressed.
LECHE, J., takes no part.