### 158 So. 553

## CITY OF NEW ORLEANS v. POSTEK et al.

## SAME v. McNEIL et al.

## SAME v. REITINGER et al.

### Nos. 33022–33024.

Nov. 26, 1934.

Rehearing Denied Jan. 7, 1935.

Richard A. Dowling, of New Orleans, for appellants.

E. M. Robbert, City Atty., and W. Sommer Benedict, Asst. City Atty., both of New Orleans, for appellee.

LAND, Justice.

The defendants Stanley Postek and Robert Watson are charged in No. 33022 with violating Ordinance No. 13,974, "relative to loitering, St. Ann Street and the River."

The defendants Thomas McNeil, Robert Watson, and Fred Pierson are charged in No. 33023 with violating Ordinance No. 1436, § 1, "relative to being vagrants, additionally with having no visible means of support."

The defendants Raymond Reitinger and Fred Bings, in No. 33024, are charged with being "dangerous and suspicious characters, pending investigation of a robbery." The defendant Bings was acquitted.

Ordinance No. 13974 is "An ordinance amending and re-enacting Ordinance No. 1025, Administration Series, an ordinance to suppress and punish vagrancy in the City of New Orleans."

Ordinance No. 1436, New Council Series, is "An Ordinance relative to vagrants, dangerous and suspicious persons, bunco steerers, confidence men, notorious thieves and those who harbor or maintain same."

In No. 33022, Stanley Postek and Robert Watson were found guilty as charged and sentenced to pay a fine of $10 or serve 30 days in jail.

In No. 33023, Thomas McNeil, Robert Watson, and Fred Pierson were found guilty as charged and sentenced to pay a fine of $25 and serve 20 days and 9 days additional in default of payment of fine.

In No. 33024, Fred Bings was discharged, and Raymond Reitinger was found guilty as charged and sentenced to pay a fine of $20

and to serve 20 days and 9 days additional in default of payment of fine.

All of the defendants in the recorder's court demurred to the charges against them, and attacked the constitutionality of the ordinances as being in contravention of the Bill of Rights of the State Constitution (art. 1, § 2) and of the Fourteenth Amendment to the Constitution of the United States, in that they, arbitrarily and oppressively, deprive citizens of the United States of their liberty, without justification and without due process of law; and further that the ordinances are class legislation, in that they are applicable to the poor only, and are without application to the rich and powerful.

The demurrers were overruled and, after trial and conviction, defendants took suspensive appeals to this court on the question vel non of the constitutionality of the ordinances, as provided by article 7, § 10 of the Constitution of 1921, and also suspensive appeals, on the facts of the case, to the criminal district court for the parish of Orleans, as provided by article 7, § 83, of the present Constitution.

See New Orleans v. Chappuis, 105 La. 179, 29 So. 721; New Orleans v. Rinaldi, 105 La. 183, 29 So. 484; New Orleans v. Hughes et al., 156 La. 628, 101 So. 1.

■ Under these constitutional provisions and under the decisions above cited, this court is vested with jurisdiction only to the extent of passing upon the constitutionality of the ordinances in question, and is not concerned as to the facts of the cases.

Ordinance No. 13974, § 1, under which the defendants Stanley Postek and Robert Watson are charged "relative to loitering, St. Ann Street and the River," reads as follows:

"Section 1. Be it ordained by the City Council of the City of New Orleans, That all idle persons having no visible means wherewith to support and maintain themselves, and who live without employment; *all persons wandering abroad or about the streets, wharves, landings, depots, public squares or places and lodging in beer houses, market places, sheds, barns, uninhabited buildings, or in the open air, and not able to satisfactorily account for such acts and conduct;* all persons who are without any apparent means of honestly earning their livelihood and support, or who live in or habitually loiter about and frequent houses or places known by the police authorities to be harboring places for, and the resort of thieves, burglars and suspicious characters; all persons who shall have been officially reported to the police authorities by the police authorities of any other state or city of the United States, as a notorious thief or criminal, and who shall remain in the City of New Orleans without honest employment, or without some honest avocation, twenty four hours after the said police authorities shall have notified to such that his character is known to them; all persons who follow the occupation of enticing strangers and other persons to visit bawdy houses, gambling houses, or to gamble, all ropers and cappers, and such persons as are commonly known as pimps, touts and fakirs, all persons who follow gambling for a vocation, and depend on gambling games, or furnishing rooms, tools, or implements for playing gambling games, for a means of subsistence or income. All persons who are habitual beggars, and who beg on the streets or who go from house to house soliciting alms without first having obtained a permit therefor from the Mayor of the city; all habitual drunkards who shall

abandon their families or neglect or refuse to aid in the support thereof and who shall be complained of by any member of the family, shall be deemed, and are hereby declared *to be vagrants,* and it shall be the duty of the members and officers of the police to arrest all such persons when found within the limits of the City of New Orleans, and bring them before any recorder of competent jurisdiction, who shall hear and determine the charge and accusation made against such person, without unreasonable delay, and if he shall find the accused to be guilty, *and a vagrant,* according to the provisions of this ordinance, such recorder shall impose on *said vagrant* a fine not exceeding $25 and, in default of payment of such fine, to commit *said vagrant* to the police Jail for a term of imprisonment not exceeding thirty days, or both, at his discretion." (Italics ours.)

The charge against the defendants Stanley Postek and Robert Watson, in No. 33022, "relative to loitering, St. Ann *Street and the River,"* refers to that part of the ordinance which classifies as vagrants "all persons wandering abroad or about *the streets, wharves, landings,* depots, public squares or places and lodging in beer houses, market places, sheds, barns, uninhabited buildings or in the open air, and not able to satisfactorily account for such acts and conduct." (Italics ours.)

Ordinance No. 1436, New Council Series, under which the other defendants are charged, reads as follows: "Section 1. Be It Ordained by the Council of the City of New Orleans, That all persons who shall have been officially reported to the police authorities by the police authorities of any other state or city of the United States, or foreign countries, and known as notorious thieves or criminals, and who are found within this city without honest employment or avocation; and all idle persons who have no visible means to maintain themselves, who live without employment; all persons wandering abroad and lodging in groceries, taverns, beer houses, market places, sheds, barns and uninhabited buildings, or in the open air; and all persons who follow the occupation of enticing strangers or other persons to visit bawdy houses, gambling houses or to gamble, all ropers and cappers and such persons as are commonly known as pimps, touts and fakirs; all persons who follow gambling as a vocation and depend on gambling games or furnish rooms or implements for playing gambling games for a means of subsistence or income; and all persons notoriously known as pickpockets shall be considered *as vagrants, dangerous and suspicious persons and vagabonds;* and upon conviction before a recorder having jurisdiction shall be fined not less than fifteen dollars nor more than twenty-five dollars, and in default of payment of said fine, to not less than fifteen days nor more than thirty days' imprisonment in the parish prison, or both, at the discretion of the court." (Italics ours.)

These ordinances have defined the usual and commonly known types or classes of vagrants.

First. There is the stereotype class of idle persons, without visible means of support, and who live without employment.

Second. There is the thriftless loiterer, wandering abroad, or about public places, and lodging in barns, sheds, uninhabited buildings, or in the open air, or lodging in beer

houses and market places, etc., and unable to account for such acts and conduct.

Third. There are the prostitute and the gambler, and their pimps and touts, and ropers and cappers.

Fourth. There are the common cheats, the bunco steerer, the confidence man, and the fakir.

Fifth. There are the notorious thief, pickpocket, and criminal, without honest employment, remaining in the city after notice to leave.

Sixth. And habitual beggars, who beg on the streets, or go from door to door.

In State v. McCormick, 142 La. 581, 582, 77 So. 288, 289, L. R. A. 1918C, 262, it is said:

" 'The legitimate exercise of the police power is not subject to restraint by constitutional provisions for the general protection of rights of individual life, liberty, and property.' State v. Schlemmer, 42 La. Ann. 1166, 8 So. 307, 10 L. R. A. 135. And the Fourteenth Amendment to the Constitution of the United States does not interfere with the proper exercise of that power. 6 R. C. L. pars. 193, 194; L'Hote v. New Orleans, 177 U. S. 596, 20 S. Ct. 788, 44 L. Ed. 903.

" 'However difficult it may be,' say the authorities, 'to render a satisfactory definition of "police power," there seems to be no doubt that it extends to the protection of the lives, health, and property of the citizens, and to the preservation of good order and the public morals.' R. C. L. par. 199."

In the case of People v. Forbes, 4 Parker, Cr. R. (N. Y.) 611, a conviction for vagrancy was upheld; the court saying: "These stat-

utes declaring a certain class or description of persons vagrants, and authorizing their conviction and punishment as such, as well as certain statutes declaring a certain class or description of persons to be disorderly persons, and authorizing their arrest as such, are in fact rather of the nature of public regulations to prevent crime and public charges and burdens, than of the nature of ordinary criminal laws prohibiting and punishing an act or acts as a crime or crimes. If the condition of a person brings him within the description of either of the statutes declaring what persons shall be esteemed vagrants, he may be convicted and imprisoned, whether such a condition is his misfortune or his fault. His individual liberty must yield to the public necessity or the public good." .

In Blackstone's Commentaries, p. 170, is found the following language: "Idleness in any person whatsoever is also a high offense against the public economy. * * * The civil law expelled all sturdy vagrants from the City and in our law all idle persons are vagrants whom our ancient statutes describe to be 'such as wake in the night and sleep in the day and haunt customable taverns and ale houses and routs about; and no man wot whence they come nor whither they go,' or such as are more particularly described by statute 17 Geo. II, Chapter 5, and divided into three classes, idle and disorderly persons, rogues and vagabonds, and incorrigible rogues, all these are offenders against the good order and blemishes under the government of any kingdom."

In State v. Westmoreland, 133 La. 1015, 63 So. 502, 503, the court said: "Vagrancy has been a state offense since 1855, and is denounced by section 3877 et seq. of the Revised

Statutes of 1870. The power to arrest and punish vagrants and suspicious persons is usually conferred on all municipalities. This power was recognized and enforced in the case of City of Shreveport v. Bowen, 116 La. 522, 40 So. 859."

In Ex parte Strittmatter, 58 Tex. Cr. R. 156, 124 S. W. 906, 907, 137 Am. St. Rep. 937, 21 Ann. Cas. 477, in upholding the constitutionality of a statute of the state of Texas, declaring as vagrants all able-bodied loafers, loiterers, and idlers, without any visible means of support, the court said: "That it is within the power of the Legislature in this state to define, subject to certain broad limitations, what is a vagrant, can admit of no sort of doubt, and statutes which have classed prostitutes, professional gamblers, and others of that class as such, have always been upheld. With the growth of the state and the congestion in our large cities, where the idle, the vicious, and the depraved congregate around many public places, it was essential to the peace of the state and the protection of society that some further extensions of this definition should be made."

Act No. 178 of 1904 reads in part as follows: "That the several Municipal Corporations throughout the State shall adopt ordinances declaring vagrants, and punishing as such, all persons * * * who live by * * * gambling," etc. Section 1.

In City of Shreveport v. Bowen, 116 La. 522, 40 So. 859, it was held that: "Where, under an ordinance (and statute authorizing it), denouncing as vagrants all persons who live by gambling, and imposing a penalty, the charge is made that 'the defendant is a vagrant, being a person without visible means

of support, who gambles, at the game of draw poker, for a living,' the charge should be entertained and the trial proceeded with."

In State v. McCormick, 142 La. 580, 77 So. 288, L. R. A. 1918C, 262, it was held that a statute (Act No. 226 of 1912) penalizing as vagrants "male persons who habitually associate with prostitutes and who habitually loiter in or around houses of prostitution" is a competent exercise of the police power.

■■ The police power clearly extends to the regulation or suppression of houses of prostitution, and to the preservation of public morals.

The police power also extends, without doubt, to the preservation of good order and to the security of every community, and for this reason, persons "who live in or habitually loiter about and frequent houses or places known by the police authorities to be harboring places for, and the resort of thieves, burglars and suspicious characters" may be declared "vagrants," as has been done by the city of New Orleans in Ordinance 13974, Council Series.

The city of New Orleans, by the terms of its charter, has all the powers, privileges, and functions, which by, or pursuant to, the Constitution of the state have been or could be granted to or exercised by any city. We find no discrimination in these ordinances. All the classes of vagrants therein designated stand before the law on equal terms with, and enjoy the same rights as belong to, others in like situation.

In our opinion, both of the ordinances under consideration are within the legitimate exercise of its police power by the city of

New Orleans, and the demurrers filed by defendants were properly overruled.

It is therefore ordered that Ordinance No. 13974 and Ordinance No. 1436 of the city of New Orleans be, and are, hereby decreed to be constitutional and valid.