REID, Judge.
Willie Travis Frazier brought this suit against New Hampshire Insurance Company and Employers’ Liability Assurance Corporation, Ltd., insurers of a dwelling owned by plaintiff which was destroyed by fire.
The facts show that on June 1, 1961, New Hampshire Insurance Company issued its policy No. F-80-40-08 to Willie T. Frazier for $7,400, fire and extended coverage oh certain farm property, including a residence and other buildings; that the insurance on the residence was $5,700; that on January 1, 1963, The Employers’ Liability Assurance Corporation, Ltd., re-insured the property under a Bordereau agreement; that on June 2, 1965, an endorsement was made showing a loss payable clause in favor of the United States of America (Farmers Home Administration) ; and that on June 3, 1965, the coverage was increased to $8,100, the increase to apply only to a dry barn of metal construction with frame studs and approved roofing. On April 12, 1965, the plaintiff had procured from Southern Farm Bureau Insurance Company another policy covering the residence in the amount of $5,000. On June 17, 1965, the residence' was destroyed by fire and plaintiff, claiming a total loss within the protection coverage of the policies filed a claim for payment. Southern Farm paid its claim but New Hampshire and Employers’ refused payment. Mr. Frazier sued for the total amount of the latter’s policy, that is, $8,100.
Employers’ and New Hampshire allege that they refused payment on the grounds that plaintiff had obtained additional insurance from Southern Farm without giving knowledge of such additional insurance to the defendants, and the issuance of such additional insurance was a breach of the policy issued by the defendants. Defendants further allege that the residence owned by plaintiff and destroyed by fire was not occupied for a period in excess of some sixty days prior to the fire which constituted another breach of their policy. They claimed that the breaches by the plaintiff of the policy issued by New Hampshire and reinsured by Employers’ increased the moral and physical hazard of the policy so issued as defined under LSA-R.S. 22:691.
After trial of the matter the District Court rendered judgment in favor of the plaintiff, Willie Travis Frazier, and against Employers’ Liability Assurance Corporation, Ltd. and New Hampshire Insurance Company of Manchester, New Hampshire, in solido, in the sum of $5,700, with legal interest from judicial demand until paid and all costs. Penalties and attorneys fees sought by the plaintiff were denied. The defendants appealed from said judgment and the plaintiff answered the appeal seeking an increase in the award.
The appellants raise two specifications of error which are the sole issues to be determined on this appeal. The first is whether or not the Trial Judge erred in failing to find that the issuance of the policy by Southern Farm Insurance Company increased the moral hazard to the insured premises, and the second is whether or not, if in fact the Trial Court did find that the moral hazard was increased, it erred in determining that the appellants’ agents had knowledge of the breach.
*381 The Trial Judge gave no written reasons for judgment. However, as shown by the facts above, it is undisputed that New Hampshire Insurance Company issued its fire and extended coverage policy to Willie T. Frazier for $7,400, including $5,700 for the residence; that the Employers’ Liability Assurance Corporation, Ltd. re-insured the property under a Bordereau agreement; that an endorsement was made showing a loss payable clause in favor of the Farmers Home Administration; and that subsequently the coverage was increased to $8,100, but the increase was to apply to a dry barn. The policy did contain the standard clause that:
“ * * * unless otherwise provided in writing added hereto, other insurance covering on any building which is covered under this policy, is prohibited. If, during the term of this policy, the Insured shall have any such other insurance, whether collectible or not, and unless permitted by written endorsement added hereto, the insurance under this policy, insofar as it applies to the building(s) on which other insurance exists, shall be suspended and of no effect.”
The quoted clause, however, is restricted by LSA-R.S. 22:692 which provides in pertinent part as follows:
“No policy of fire insurance issued by any insurer on property in this state shall hereafter be declared void by the insurer for the breach of any representation, warranty or condition contained in the said policy or in the application therefor. Such breach shall not avail the insurer to avoid liability unless such breach (1) shall exist at the time of the loss, and be either such a breach as would increase either the moral or physical hazard under the policy, or * * * ”
It is also undisputed that on April 12, 1965, the plaintiff procured from Southern Farm Bureau Insurance Company another policy covering the dwelling in the amount of $5,000 and that the residence was vacant for more than 40 days prior to the time of the fire. The defendants were, however, unable to show any evidence that this action caused an increase in the moral hazard as set out in Knowles v. Dixie Fire Ins. Co. of Greensboro, N. C., 177 La. 941, 149 So. 528, where it was held that:
“ * * * The term ‘moral hazard’ as used in the act and in the decisions relates to the pecuniary interest which the insured or some other person has either in protecting the property from loss by fire or destroying it. The moral hazard is least when the pecuniary interest of the insured in protecting it is greatest. It is greatest when his pecuniary interest is such that he might gain most by burning it. While the confession may be a sad commentary on human nature, yet it is a fact known to all that men’s pecuniary interests do sometimes influence their conduct even to the extent of burning their own property in order to collect insurance policies. The books are full of cases upholding convictions for arson where the motive was shown to be pecuniary.”
It should be pointed out that there is no evidence in the record whatever to indicate arson. Furthermore, both William Freddie Carter and Prentiss Hinson Carter, Jr., the local agents, testified as to the good character of Mr. Frazier and to the fact that he was as of the date of the trial a valued client.
It should also be pointed out that the Knowles case further stands for the proposition that in order for an insurer to avoid liability under a fire policy on the ground that the moral hazard was increased by an action of the insured, it carries the burden of showing that the changed conditions brought about by the action of the insured were of such real and substantial character as might influence the insured in his conduct and attitude toward the property. This the defendants have failed to show.
*382 The defendants’ entire case is built upon the proposition that the mere purchase of additional insurance per se increased the moral hazard to such a degree that the policy is null and void. This is not the interpretation of the requirements as set forth under R.S. 22:692 and as expressed by the Supreme Court in the Knowles case. The Knowles case is the only case cited in the syllabus to defendants’ brief and it should be emphasized that in the Knowles case recovery was denied on the very grounds that recovery is being denied herein. Furthermore, the record clearly shows that both of the local agents were aware of the fact that the plaintiff was seeking additional insurance, and while they may not have known that the additional insurance was actually taken out, certainly they had sufficient knowledge tO' be aware that it was the intention of the insured. Mr. Freddie Carter testified that Mrs. Frazier had discussed with him the fact that her husband wished to talk to him about additional insurance, and while he testified he told them he would not write additional insurance, he was certainly put on notice that it was the intention of the Fraziers to obtain additional insurance. Mr. Prentiss Carter indicated that it was mentioned to> him that the Fraziers had asked for additional insurance but he had no recollecton of being informed that the additional insurance had been procured. Mr. Carter had also discussed with Mr. Frazier the fact that the house was vacant and it appears from the record that the Trial Judge felt that there was ample notice given to the representatives of the defendants by the Fraziers.
In cases of this nature, where the Trial Judge has heard the witnesses and seen their demeanor, the decision of the Trial Judge should be given great weight, and the record in this case clearly gives substance to the judgment of the lower Court.
It is also the opinion of this Court that the trial Court was correct in its assessment of damages and its refusal to grant penalties and attorney’s fees, as the evidence does not indicate that the action of the defendants was arbitrary and capricious.
For the above and foregoing reasons the judgment of the District Court is affirmed.
Affirmed.