317 So.2d 535

Marcy **HOLLOWAY**

v.

**CITY OF BIRMINGHAM.**

**6 Div. 782.**

Court of Criminal Appeals of Alabama.

May 6, 1975.

Rehearing Denied May 27, 1975.

Parker, Wilkinson & Purvis, Birmingham, for appellant.

L. H. Warren, Birmingham, for City of Birmingham.

HARRIS, Judge.

Appellant was put to trial in the Circuit Court of Jefferson County on the following complaint:

"COMPLAINT

| "CITY OF BIRMINGHAM, A municipal corporation, Plaintiff vs. "MARCY HOLLOWAY Defendant | IN THE JEFFERSON COUNTY CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT CASE NO. 34254 |

"Comes the City of Birmingham, Alabama, a municipal corporation, and complains that Marcy Holloway within twelve (12) months before the beginning of this prosecution on, to-wit: July 26, 1973, and within the City of Birmingham, at to-wit: the 1900 block of 5th Avenue North, *did prostitute herself by making an offer to indiscriminate lewdness to R. E. Henslee contrary to and in violation of Section 43–1 of the General City Code of Birmingham, of 1964.*" (Emphasis supplied).

---

Appellant filed the following motion to quash:

"Comes the Defendant and moves this Honorable Court to Quash the Complaint herein and as grounds therefor says as follows, separately & severally:

"1. That Section 43–1 of the Birmingham City Code is unconstitutional.

"2. That said section violates this defendants' (sic) rights under the U. S. Constitution.

"3. That said section discriminates against this defendant."

This motion was overruled.

Appellant then filed the following demurrer:

"Comes the Defendant in this cause and demurs to the complaint heretofore filed in this cause and as grounds therefor says as follows separately and severally:

"1. That Section 43–1 of the Birmingham City Code is unconstitutional.

"2. That said section violates this defendants' (sic) rights under the U. S. Constitution.

"3. That said section discriminates against this defendant.

"4. That said Complaint is vogue (sic) and indefinite.

"5. That said complaint does not state a cause of action.

"6. That said complaint does not state facts sufficient to state a cause of action.

"7. That no offense is alleged.

"8. That the words alleged in the complaint, 'by making an offer to indiscriminate lewdness' do not state an offense."

The demurrer was also overruled.

Section 43–1 of the General City Code of Birmingham, 1964, provides:

"No female shall prostitute herself or use any indecent or lascivious language, gestures or behavior to induce any other person to illicit sexual intercourse."

Appellant's major contention is that said ordinance is a *sex based classification* rendering said ordinance unconstitutional.

The facts set forth in appellant's brief are supported by the record and the city agrees the facts are substantially correct. We, therefore, take the following from appellant's brief:

"During the evening hours, approximately 9:00 P.M., on July 26, 1973, Patrolman Ralph Earl Henslee of the Birmingham Police Department was alone in the 1900 block of Fifth Avenue, North, Birmingham, Alabama, when and where he saw the Appellant, Marcy Holloway. He testified that the Appellant approached him at said time and on said occasion. A conversation took place, whereby the Appellant told the officer she would perform certain sexual acts for Thirty-Five and 00/100 ($35.00) Dollars.

"Officer Henslee further testified that he was working with Officer John Maddox, who was across the street at said time and said place observing his movements. His testimony further indicated that the Appellant offered to go with him, in his automobile, to her apartment, where these sexual acts were to be performed. Upon arriving at the witness's automobile, the Appellant was placed under arrest.

"On cross-examination, Officer Henslee testified he had been a policeman for six (6) days as of July 26, 1973; that he did not give any money to the Appellant. He further testified that the Appellant was placed under arrest prior to getting into the unmarked City police car, and that no sex acts were performed; that the Appellant did not take her clothes off and that there was no touching between them.

"Officer John Maddox, Birmingham Police Department, testified that he was approximately 150–200 feet away from Officer Henslee and the Appellant at said time and on said occasion. He was not close enough to hear any conversation between Officer Henslee and the Appellant. He further testified that he saw Officer Henslee and the Appellant get in the unmarked police car and leave the location; that Officer Henslee drove around the block and picked him up on the corner where they proceeded to the City Hall.

"A motion to exclude the evidence offered by the City was made by the Appellant's attorney; said motion being overruled by the trial court, with an exception noted for the Appellant.

"The Appellant testified in her own behalf and her testimony tends to show that she had been in a restaurant/lounge just prior to her arrest, in the vicinity of the location of her arrest. She left the restaurant/lounge, going to call a cab at said time and on said occasion.

"She, seeing no cab, walked to a phone booth; the phone booth being used at the time, she waited. At this time, Mr. Henslee had a conversation with the lady in the phone booth for three minutes. He then asked the Appellant 'what she was up to'. He offered to take her home. He also asked the Appellant 'why don't we go out for a good time'. The Appellant said 'no' and she was arrested at the automobile."

In *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583, the Supreme Court of the United States said:

"At the outset, appellants contend that classifications based upon sex, like classifications based upon race, alienage, and national origin, are inherently suspect and must therefore be subjected to close judicial scrutiny. We agree and, indeed, find at least implicit support for such an approach in our unanimous decision only last term in *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225."

The main thrust of appellant's argument is that since the ordinance in question applied to female prostitutes and not male

prostitutes, she is being denied her rights under equal protection clause of the United States Constitution.

Any statute or ordinance is presumed to be constitutional and the burden is upon the party asserting its unconstitutionality to show that it is not constitutional. *Board of Trustees v. Talley,* 291 Ala. 307, 280 So.2d 553; *Al Means, Inc. v. City of Montgomery,* 268 Ala. 31, 104 So.2d 816.

A court has the duty to sustain an act (ordinance) unless it is convinced beyond a reasonable doubt of the unconstitutionality of the act (ordinance). *Reed v. Alabama Public School and College Authority,* 284 Ala. 22, 211 So.2d 381.

The equal protection clause is violated by a classification system only when it is without any reasonable basis and is arbitrary. *Board of Trustees v. Talley, supra.*

In *Kelly v. State,* 31 Ala.App. 201, 14 So.2d 599, the court defined a prostitute in the following language:

"As we have long ago declared: 'The law defines a prostitute to be a female given to indiscriminate lewdness; a strumpet. "As a verb, its definition is to offer freely to a lewd use, or to indiscriminate lewdness. As an adjective it means openly devoted to lewdness; sold to wickedness or infamous practices." A woman may be a prostitute and carry on the business of such if she so holds herself out to the world. She may on the street or in other public or *private places* so conduct herself as to make it clear that she is a prostitute, and that such is her occupation. Or any female who frequents or lives in houses of ill fame, or *associates with women of bad character for chastity,* either in public or private, or at a house which men of bad character frequent or visit, or *who commits fornication for hire,* shall be deemed to be a prostitute, or a female who offers her body to an indiscriminate intercourse with men. Finally, a prostitute means a whore or strumpet in the common acceptation of those words.' (Italics presently

supplied.) *Wilson v. State,* 17 Ala.App. 307, 84 So. 783; and see note 14 A.L.R. 1502."

■ Title 62, Section 654, Code of Alabama 1940, confers on the City of Birmingham the full measure of the state's police power to provide for the safety, preserve the health, promote the prosperity, improve the morals, orders, comforts and convenience of the inhabitants of the City and prevent and punish injuries and offenses to the public therein. *Jefferson County v. City of Birmingham,* 256 Ala. 436, 55 So.2d 196; *Cavu Club v. City of Birmingham,* 269 Ala. 46, 110 So.2d 307.

It was under this broad police power that the city promulgated Section 43–1, supra. This is a uni-sexual ordinance and applies to females only.

The state law against prostitution is found in Title 14, Section 392, Code of Alabama 1940, and applies to *any person* who commits the acts therein denounced.

In the case of *State v. Devall,* La., 302 So.2d 909, the Supreme Court of Louisiana upheld the prostitution statute of that state against the constitutional attack that it offends the Equal Protection Clause of the Constitution of the United States.

Louisiana's statute provides:

"Prostitution is the practice by a female of indiscriminate sexual intercourse with males for compensation.

"Whoever commits the crime of prostitution shall be fined not more than one hundred dollars, or imprisoned for not more than six months, or both." La.R.S. 14:82.

The Court said:

"According to the terms of the statute, the crime it reprobates can only be committed by a woman. A man practicing indiscriminate sexual intercourse with women does not commit this crime. The

defendant here is a female charged with prostitution under the statute. She contends that there is no rational basis for punishing women and not men for engaging in indistriminate sexual intercourse for compensation."

The Court went on to say:

"In applying the Equal Protection Clause, however, it has been consistently recognized that the Fourteenth Amendment does not deny to the states the power to treat different classes of persons in different ways. *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225.

"Discrimination between the sexes falls within the prohibition that states must accord equal protection to those within its jurisdiction. However, in matters in which sex is a material factor, a statute may make a distinction without violating the constitutional guarantee, if the classification is a natural and reasonable one. *Goesaert v. Cleary*, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163.

\*    \*    \*.    \*    \*    \*

"To paraphrase a footnote in the Geduldig Case, (*Geduldig v. Aiello*, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256) absent a showing that distinctions involving prostitution are merely pretexts designed to effect an invidious discrimination against the members of one sex or the other, lawmakers are constitutionally free to exclude male prostitution from the coverage of legislation on the reasonable basis that it does not constitute a social problem. Difference between the sexes does bear a rational relationship to the prohibition of prostitution by females."

The Chief Justice in the *Devall* case, joined by another justice, filed a well-reasoned dissenting opinion. We will quote portions from this dissent to demonstrate that there is another, and persuasive, side of the argument that the seller and the buyer of sexual services should be dealt with, if at all, on an equal basis, and with an even hand, in a criminal prosecution.

"A state has broad authority under its police power to enact legislation to protect the health, safety, and welfare of its people. Quite clearly, therefore, a state has the authority to enact restrictive legislation pertaining to prostitution, long regarded as a threat to the health and safety of the general public. *L'Hote v. New Orleans*, 177 U.S. 587, 20 S.Ct. 788, 44 L.Ed. 899 (1899); *State v. McCormick*, 142 La. 580, 77 So. 288 (1917); 73 C.J.S. Prostitution § 2, p. 226; 16 Am.Jur.2d, Prostitution, § 262, p. 514.

"The State's authority to ban prostitution, however, is not at issue here. The issue is the constitutionality of a prostitution statute that places the heavy hand of the law upon women alone, while men who engage in the same conduct go free. The district court held that such a statute violated the Equal Protection Clause of the United States Constitution. I agree.

\*    \*    \*    \*    \*    \*

"The defendant asserts that the statute is fatally defective, because it fails to penalize the male who pays for and receives the female's sexual services. Secondly, the defendant asserts that the statute is defective, because it fails to penalize the male who engages in sexual intercourse for compensation. I find merit in the second attack.

\*    \*    \*    \*    \*    \*

"The State argues that there is a reasonable basis for the sexual classification here, since historically the sexual services of women have been in greater demand. The sale of sexual services by men, it is asserted, has not created a social problem warranting legislative attention.

"Although the sale of sexual services by men may not be as extensive as the sale of such services by women, the practice

does exist. Hence, the absence of the practice cannot serve as a basis for the restricted classification.

"As noted by the trial judge, the law against prostitution has a three-fold purpose: preventing the spread of venereal disease; shielding citizens from annoyance; and controlling related crimes, such as illicit drugs, gambling, and organized crime.

"Male prostitution, like female prostitution, contributes to the evils which the statute was designed to prevent. Hence, classification by sex bears no real relation to the objectives of the statute.

\* \* \* \* \* \*

"As noted in the majority opinion, state courts have upheld the constitutionality of the uni-sexual prostitution statutes in Wisconsin and Indiana. See *State v. Mertes,* 60 Wis.2d 414, 210 N.W.2d 741 (1973); *Wilson v. State,* Ind., 278 N.E. 2d 569 (1972), cert. den. 408 U.S. 928, 92 S.Ct. 2494, 33 L.Ed.2d 341 (1972). These decisions, however, failed to take into account the vast changes in the social and legal status of women during the past decade. Nor did these decisions address themselves fully to the question of whether the sexual classification bore a substantial relationship to the legislative objective of the statute in question.

\* \* \* \* \* \*

"In general, doctrinal writers support the view that prostitution statutes that criminalize women only are unconstitutional because of invidious sex discrimination. See, e. g., Rosenbleet and Pariente, The Prostitution of the Criminal Law, 11 Am.Crim.L.Rev. 373, 381–411 (1973); Kanowitz, Women and the Law: The Unfinished Revolution, p. 18 (1969); Brown, Emerson, Falk and Freedman, The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women, 80 Yale L.Journ. 871, 962–965 (1971); Eastwood, The Double Standard of Justice; Women's Rights Under the Constitution, 5 Val.Un.L.Rev. 281, 315 (1971).

"I am unable to discern any rational justification for subjecting a female to criminal process for offering her body indiscriminately for compensation, while allowing a male the freedom to engage in similar conduct without criminal consequences. Such conduct by a female poses no greater threat to the health, safety, or welfare of the community than such conduct by a male."

In an article, *The Prostitution of the Criminal Law,* published in American Criminal Law Review ABA, Vol. 2, 1972–73, we find the following expressions:

"The penalization of a female who offers her body to indiscriminate sexual activity for hire—to the exclusion of the male who offers to pay for a female's participation in sexual activity or the male who offers his body to indiscriminate lewdness—must, at first glance, be characterized as a most blatant manifestation of the legal oppression of women."

Further:

"Thus, the prostitute, who under present social circumstances is usually a woman, is penalized, while the male patron is free to solicit her services without fear of sanction. As an unusually enlightened New York court long ago recognized, there is an invidious discrimination which results from penalizing the prostitute to the exclusion of her male patron:

" 'The men create the market, and the women who supply the demand pay the penalty. It is time this unfair discrimination and injustice should cease . . . The practical application of the law as heretofore enforced is an unjust discrimination against women in the matter of an offense, which in its very nature, if completed, requires the participation of men.' "

The above quotations fully support the dissenting opinion in *Devall, supra.*

The trouble we find with Section 43–1 of the General City Code of the City of Birmingham, 1964, is that it is vague and overbroad.

■ The emphasized portion of the Complaint, supra, simply does not constitute the crime of prostitution. Here appellant made a solicitation to perform a natural and an unnatural sex act for a named sum of money. The proposition got no further than that. There was no bedroom affair, no disrobing, no touching of the bodies, no money paid, and no sexual activity. In short, the crime of prostitution was not committed.

The demurrer should have been sustained and appellant's motion to exclude the city's evidence should have been granted.

Reversed and remanded.

All the Judges concur.

CATES, P. J., and BOOKOUT, J., concur specially.

BOOKOUT, Judge (concurring).

I am of the opinion that the city ordinance is legally adequate, but without going into the facts of the case, I am of the opinion that the complaint failed to alleged an offense.

Section 43–1 of the City Code of Birmingham establishes two offenses, i. e. (1) no female shall prostitute herself or (2) use any indecent or lascivious language, gestures or behavior to induce any person to illicit sexual intercourse.

The complaint stated that the appellant, ". . . did prostitute herself by making an offer to indiscriminate lewdness to R. E. Henslee contrary to and in violation of Section 43–1 . . ."

An "offer to indiscriminate lewdness" does not constitute the offenses of prostitution. There is a vast difference between an *offer* and an *act*. An offer to commit murder is not murder; an offer to commit robbery is not robbery; and, an offer to commit prostitution is not prostitution. An "offer to indiscriminate lewdness" is vague and indefinite and does not apprise a defendant of any offense charged within the wording of Section 43–1, *supra*.

Since the offense of prostitution is not charged in the complaint, we must look to the second portion of the ordinance to see if the other prohibited conduct set out therein is sufficiently described in the complaint. I think not. If the complaint had stated that the appellant, "used indecent or lascivious language, gestures or behavior to induce R. E. Henslee to have illicit sexual intercourse," a valid offense may have then been alleged under the second portion of the ordinance. Nowhere does the ordinance make an offer to indiscriminate lewdness illegal. I am, therefore, of the opinion that the demurrer to the complaint should have been sustained.

CATES, Presiding Judge (concurring).

I

I am persuaded by the reasoning of Sanders, C. J., dissenting in *State v. Devall*, La., 302 So.2d 909.

I see no even-handedness in a city's waging a campaign against Coyotes and not against Gigolos. An Elizabethan might say, "A Pox on both your houses." Yet our society, either in asepsis or asceticism, should be even-handed.

II

I also agree with both HARRIS and BOOKOUT, JJ.