392 So.2d 1226 (1980)
William Wayne HYDE
v.
The CITY OF BIRMINGHAM.
6 Div. 238.
Court of Criminal Appeals of Alabama.
June 17, 1980.
Rehearing Denied June 30, 1980.
J. Louis Wilkinson, Birmingham, for appellant.
Rowena M. Crocker, Asst. City Atty., Birmingham, for appellee.
TYSON, Judge.
William Wayne Hyde was tried and convicted in Birmingham Municipal Court based upon a complaint charging him with "unlawfully [disturbing] the peace of others by having a firearm or firearms in his possession in a public place or within public view under circumstances where the natural tendency of such possession would be to provoke a breach of the peace, contrary to and in violation of Ordinance 79-71 of the General Code of the City of Birmingham, Alabama, 1964, as amended."
Appellant appealed the conviction to the Jefferson County Circuit Court where he obtained a jury trial. The jury found him "guilty as charged in the complaint" and fixed his punishment at a fine of one hundred dollars. The trial court set sentence in accordance with the verdict of the jury and the costs of court were also assessed against the appellant. Additionally, the appellant was sentenced to a total of twenty-seven days hard labor for the fine and the costs of the case.
The facts giving rise to the instant charge, as established at trial, are as follows:
*1227 In the summer of 1979, a young black woman, Bonita Carter, was shot and killed by a white police officer outside one of two Jerry's convenience stores located in the Kingston area of Birmingham, Alabama. Following that incident, racial tension was acute in the city and open acts of violence and racial conflict occurred in the area near the two Jerry's convenience stores. The two stores were located within five blocks of each other. The Bonita Carter shooting incident and the racial disturbances that followed were widely reported by various news media.
On July 6, 1979, at approximately 3:00 p. m., Officers John A. Gjellum and Chris Moore of the Birmingham Police Department received a radio dispatch to proceed to the area near one of the Jerry's convenience stores which had been the scene of several disturbances. Upon arriving at that location, the two officers observed a black pickup truck, which had been described in the radio dispatch, located in the parking lot of the convenience store. The truck immediately crossed the street to the Holiday Inn parking lot where another police car, manned by Officers Daniel Phillips and Michael C. Shores, was parked. Three white males were in the truck and the appellant was driving.
Officer Phillips approached the appellant and asked him to leave the area because they were expecting trouble. About that time Officers Gjellum and Moore drove into the parking lot, got out of their car, and approached the pickup truck. Officer Gjellum approached the driver's side of the truck and Officer Moore went to the passenger side. Both officers testified that from the outside of the truck they could clearly see a shotgun propped up against the seat of the truck between the appellant and the middle passenger. Officer Phillips testified that he was standing behind the driver's door at that time and did not see a gun.
Officer Gjellum asked appellant to step out of the truck and then removed therefrom three pistols and the shotgun. According to Gjellum the appellant stated at that time that the guns belonged to him. Neither of the other passengers claimed ownership of any of the guns.
Appellant was not charged with unlawful possession of the pistols because he had a valid permit; he was arrested, however, on the instant charge.
Appellant testified in his own behalf that he was in the vicinity of Jerry's convenience store on the day in question in order to pick up a friend and to go to target practice. Appellant disclaimed ownership of the shotgun and insisted that this friend, Wayne Sharp, brought the gun out of his house when he was picked up. Appellant explained that he stopped at Jerry's convenience store to get some ice, grapefruit juice and cigarettes and then drove across the street to the Holiday Inn parking lot to speak to a police officer he mistakenly thought he recognized.
He also stated on cross-examination that he was aware of the shooting which had taken place two weeks earlier and that the area around the Jerry's convenience stores had been the scene of late of violence and unrest.

I
On appeal appellant contends that Ordinance 79-71, General City Code of Birmingham, 1964, as amended, violates Article I, Section 26 of the Alabama Constitution of 1901.
Article I, Section 26, of the Alabama Constitution of 1901 provides as follows: "That every citizen has a right to bear arms in defense of himself and the state."
It is well-settled and "universally recognized," however, that this right of a citizen to bear arms in defense of himself and the state is subject to reasonable regulation under the police powers of the state. Mason v. State, 39 Ala.App. 1, 103 So.2d 337 (1956), affirmed, 267 Ala. 507, 103 So.2d 341, cert. denied, 358 U.S. 934, 79 S.Ct. 323, 3 L.Ed.2d 306; Jackson v. State, 37 Ala. App. 335, 68 So.2d 850 (1953).
It is likewise well-settled that the State of Alabama has conferred the full measure *1228 of its police power on the City of Birmingham to protect the public's safety, health, and welfare. § 11-45-1, Code of Alabama 1975; Holloway v. City of Birmingham, 55 Ala.App. 568, 317 So.2d 535 (1975).
The issue before this court on this appeal is whether the ordinance in question is a reasonable and valid exercise of the city's police powers.
The ordinance in question, omitting formal parts, reads as follows:
"ORDINANCE NO. 79-71
"AN ORDINANCE TO MAKE UNLAWFUL THE POSSESSION OF A FIREARM IN A PUBLIC PLACE OR WITHIN PUBLIC VIEW UNDER CIRCUMSTANCES TENDING TO PROVOKE A BREACH OF THE PEACE.
"BE IT ORDAINED by the Council of the City of Birmingham as follows:
"Section 1. Definitions.

"For the purpose of this ordinance the following term shall have the following meaning:
"(a) Firearm: Any instrument used in the propulsion of shot, shell, or bullets by the action of gunpowder exploded within it and which has a barrel twelve inches or more in length.
"Section 2. Unlawful To Disturb The Peace Of Others By Possession Of Firearm In Public Place Or Within Public View Under Circumstances Where Possession Would Tend To Provoke Breach Of Peace.
"No person shall disturb the peace of others by having a firearm in his possession in a public place or within public view under circumstances where the natural tendency of such possession would be to provoke a breach of the peace."
In treating a similar question, former Chief Justice Collier observed in State v. Reid, 1 Ala. 612 (1840), that:
"... The constitution of a State, is an instrument of restraint and limitation upon powers already plenary, so far as it respects the functions of government and the objects of legislation. We are then, to regard the provision in question, as a guaranty to the people of the right to bear arms, `in defence of themselves and the State,' and an inhibition upon the Legislature to divest it by any enactment.
"... The constitution in declaring that, `Every citizen has the right to bear arms in defence of himself and the State,' has neither expressly nor by implication, denied to the Legislature, the right to enact laws in regard to the manner in which arms shall be borne. The right guaranteed to the citizen, is not to bear arms upon all occasions and in all places, but merely `in defence of himself and the State.' The terms in which this provision is phrased seem to us, necessarily to leave with the Legislature the authority to adopt such regulations of police, as may be dictated by the safety of the people and the advancement of public morals....
"We do not desire to be understood as maintaining, that in regulating the manner of bearing arms, the authority of the Legislature has no other limit than its own discretion. A statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defence, would be clearly unconstitutional. But a law which is intended merely to promote personal security, and to put down lawless aggression and violence, and to that end inhibits the wearing of certain weapons, in such a manner as is calculated to exert an unhappy influence upon the moral feelings of the wearer, by making him less regardful of the personal security of others, does not come in collision with the constitution." Id. at 616-617.
In the present case the ordinance is clearly intended to promote personal security and to put down lawless aggression and violence and to that end forbids the public possession of certain weapons "under circumstances where the natural tendency of such possession would be to provoke a breach of the peace." This ordinance therefore is a valid exercise of this police power.
*1229 As stated in Abernathy v. State, 42 Ala. App. 149, 155 So.2d 586 (1962): "An act which would be lawful in some circumstances may amount to a breach of the peace if done under other circumstances."
The undisputed facts in this case are that the area in which appellant was arrested had in recent days been the scene of racial unrest and violence. The "natural tendency" of the appellant's open display of the shotgun in question would be to not only provoke, but to invite a breach of the peace. We are of the opinion that the City of Birmingham does not run afoul of this state's constitution by its adoption of this ordinance which seeks to prevent lawless armed confrontations.
There is no error shown by this record. This cause is therefore due to be and is hereby
AFFIRMED.
HARRIS, P. J., and BOWEN, J., concur.
DeCARLO and BOOKOUT, JJ., dissent with opinion.
DeCARLO, Judge, dissents.
Article I, § 26 of the Constitution of Alabama of 1901, declares: "That every citizen has a right to bear arms in defense of himself and the state."
In the foregoing matter, the City of Birmingham justifies, through exercise of its police power, an infringement on this right to bear arms. The particular ordinance involved deprives citizens of bearing arms in a racially disturbed area because, from the City's point of view, such bearing of arms would incite others to riot. This argument, I suggest, has no more merit than the argument that short skirts on women incite would-be attackers to rape.
This court in Morris v. State, Ala.Cr.App., 342 So.2d 417, recognized that, under T. 14, § 175, Code of Alabama 1940, Recompiled 1958, a person had a right, with a permit, to carry a pistol in a vehicle. The court also said the statute did not prohibit the carrying of an unconcealed pistol. The court commented that a person had a right to carry a pistol unconcealed in a "scabbard or holster, worn on the side and not covered."
It appears that the Birmingham City Ordinance would not permit a person to go into an area with a "long gun" but would allow a person to enter the same area with a pistol or a revolver. Without question, the long gun carried in a truck would not incite a person to riot anymore than would a pistol or a revolver carried on a person's hip. The City's Ordinance is vague, unconstitutional, and an unwarranted infringement on the right of citizens to bear arms.
For the foregoing reasons, I therefore dissent.
BOOKOUT, J., joins in the above.